**Karolyn S. BLYDENBURG–DIXON, Appellant,**

v.

**Barney H. DIXON, Respondent.**

**No. WD 68898.**

Missouri Court of Appeals, Western District.

Feb. 24, 2009.

Larry V. Swall, II, Liberty, MO, Counsel for Appellant.

J. Michael Murphy, Liberty, MO, Counsel for Respondent.

Before: THOMAS H. NEWTON, C.J., HAROLD L. LOWENSTEIN, and VICTOR C. HOWARD, JJ.

THOMAS H. NEWTON, Chief Judge.

Ms. Karolyn Blydenburg–Dixon appeals the trial court's dissolution of marriage judgment. She contests the trial court's finding that the proceeds from Mr. Barney Dixon's personal injury settlement were his non-marital property. We affirm.

**Factual and Procedural Background**

Ms. Blydenburg–Dixon and Mr. Dixon were married under Kansas common law and they had one daughter. Mr. Dixon had a work accident in 1994 that left him a quadriplegic. Mr. Dixon filed a lawsuit in a Kansas federal court, seeking damages for his injury. The parties entered into a settlement agreement, and an annuity was purchased. According to the settlement agreement, its total value was slightly over three million dollars. The agreement provided for an initial payment of $1,452,374, monthly payments of $5,200, and two types of lump sum payments. The periodic payments were structured as follows:

(1) 240 monthly payments of $5,200 to Ms. Blydenburg–Dixon and Mr. Dixon "jointly, or all to the survivor ... and continuing for lives of Barney H. Dixon or Karolyn Blydenburg–Dixon" [hereinafter monthly annuity payments], guaranteed from May 1, 1997 until April 2017;

(2) Lump sum payments to Mr. Dixon every five years from 2002 until 2017 ($25,000 in 2002; $50,000 in 2007; $75,000 in 2012; $100,000 in 2017) [hereinafter quinquennial payments]; and

(3) Lump sum payments to Mr. Dixon in the amount of $25,000 for each of the four years from 2008 to 2011 [hereinafter four annual payments].[1]

Subsequently, the Dixon family moved to Missouri. In 2006, Ms. Blydenburg–Dixon filed a petition for legal separation as well as a motion for custody, support, and a suggestion of guardianship. Mr. Dixon responded with a cross-petition for dissolution, requesting division of the marital property and debt. The circuit court entered a temporary order dividing the monthly annuity payments evenly until a final hearing.

After the hearing, legal custody of the Dixons' daughter was awarded jointly, both parents were given parenting time, and Ms. Blydenburg–Dixon's address was designated as the daughter's mailing address. The trial court calculated its own Form 14 based on the monthly annuity payments and income imputed to Ms. Blydenburg–Dixon because of her capacity for full-time employment. Mr. Dixon was ordered to pay $837.00 a month in child support.

At the time of the Dixons' dissolution, all annuity payments previously issued had been spent and the remainder of lump and periodic payments due under the settlement agreement totaled slightly over $900,000. The trial court determined that the remaining settlement payments were Mr. Dixon's non-marital property. The trial court further found that if Mr. Dixon

1. These payments corresponded to the years the Dixons' daughter would be of college age.

did not have the monthly annuity payments, a maintenance award would be necessary. It divided the marital personal property, ordered Ms. Blydenburg–Dixon to pay credit card debt, Mr. Dixon to pay medical debt, and each party to pay their own attorney fees. Ms. Blydenburg–Dixon appeals.

## Standard of Review

■ We review the trial court's judgment under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Heslop v. Heslop*, 967 S.W.2d 249, 252 (Mo.App. W.D.1998). We affirm unless the judgment is against the weight of the evidence, not supported by substantial evidence, or erroneously declares or applies the law. *Id.* We consider only the facts and inferences favorable to the prevailing party and defer to the trial court's determinations of credibility. *Id.* The burden of showing error lies with the appellant. *Kirkwood v. Kirkwood*, 77 S.W.3d 675, 680 (Mo.App. S.D.2002).

## Legal Analysis

■ Ms. Blydenburg–Dixon raises three points challenging the trial court's finding that the post-dissolution monthly annuity payments were Mr. Dixon's non-marital property. Because of the statutory presumption that property acquired during marriage is marital, non-marital property must be proven by clear and convincing evidence. *Buckner v. Buckner*, 912 S.W.2d 65, 69 (Mo.App. W.D.1995). In her first point, Ms. Blydenburg–Dixon argues that Mr. Dixon did not meet this burden to show that the post-dissolution monthly annuity payments were his non-marital property. We do not agree.

■ We first reject Ms. Blydenburg–Dixon's argument that the monthly annuity payments are marital because they were payable jointly to her and Mr. Dixon. Placing separate property into the names of both spouses creates a presumption that the property has been transferred to the marriage "and clear and convincing evidence is required to show that the transfer was not intended as a gift." *In re Marriage of Tullier*, 989 S.W.2d 607, 612 (Mo. App. S.D.1999) (internal quotation marks and citations omitted). However, this presumption was refuted by proof that the payments were made jointly to facilitate negotiation because of Mr. Dixon's physical disabilities, including an inability to write or sign his name.

■ We also reject Ms. Blydenburg–Dixon's assertion that the remaining monthly annuity payments are marital property because they were intended to compensate the marital estate, as well as Mr. Dixon individually. In a marriage dissolution proceeding, the trial court uses a two-step process for dividing property. *Sullivan v. Sullivan*, 159 S.W.3d 529, 534 (Mo.App. W.D.2005). The trial court must first set aside non-marital property before it divides marital property "in such proportions as [it] deems just." § 452.330.[2] Property acquired during the marriage is presumed to be marital, but the presumption may be overcome. § 453.330.3. A settlement for a personal injury claim occurring during the marriage may be both marital and non-marital. *See Petties v. Petties*, 129 S.W.3d 901, 908 (Mo.App. W.D.2004).

■ To determine whether funds from a personal injury settlement are marital or non-marital, Missouri uses the "analytical" approach. *Coffman v. Coffman*, 215 S.W.3d 309, 311 (Mo.App. W.D.2007). Under this approach, also known as "replacement analysis," the settlement award is classified by what it is meant to replace. *Brill v. Brill*, 65 S.W.3d 583, 586 (Mo.App.

---

**2.** All statutory references are to RSMo 2000 and the Cumulative Supplement 2007.

S.D.2002). To determine the intent of a settlement, a court may look to what the parties would have received if the claims had been adjudicated. *See Mistler v. Mistler,* 816 S.W.2d 241, 250 (Mo.App. S.D. 1991). If the award is to compensate for separate, non-marital losses, it is non-marital property; *to the extent it compensates for marital losses, it is marital property. Al–Yusuf v. Al–Yusuf,* 969 S.W.2d 778, 786 (Mo.App. W.D.1998).

 Under the analytical approach, compensation for loss of future, post-dissolution wages is non-marital property, while compensation for wages lost during the marriage is marital. *Heslop,* 967 S.W.2d at 254. Similarly, compensation for post-dissolution medical expenses is generally considered non-marital, while compensation for medical expenses during the marriage is generally marital. *Mistler,* 816 S.W.2d at 251 n. 11. Compensation for noneconomic damages, such as "pain, suffering, disfigurement, disability, and loss of ability to lead a normal life" is generally considered the separate property of the injured spouse. *Id.*

Here, the trial court found that the settlement funds were specifically to compensate Mr. Dixon for a lifetime of medical care and that he had waived his claims to medical benefits in exchange for the annuity payments. The record supports this finding. At the time of the settlement, Mr. Dixon was in his forties and a quadriplegic who would be unable to work for the rest of his life. At the time of dissolution, Mr. Dixon remained unable to care for his basic needs, had lost his left leg, and required around-the-clock care and routine hospitalization. As a condition of the settlement, Mr. Dixon waived his rights to all workers' compensation benefits.[3] His workers' compensation attorney also testi-fied that the settlement compensated Mr. Dixon for future medical claims, future lost wages, and future pain and suffering.

The record offers conflicting testimony as to whether Ms. Blydenburg–Dixon was a plaintiff in Mr. Dixon's personal injury suit. She is, however, listed as a complainant in the settlement agreement. Under the terms of the settlement, both she and Mr. Dixon waive "any and all claims for loss of marital services and consortium" in consideration of the settlement. Thus, it might be inferred that the settlement was also intended to compensate Ms. Blydenburg–Dixon for her loss of consortium and "the added burdens ... of caring for a spouse who had suffered a catastrophic injury." *Id.* at 251. It might also be inferred that a portion of the settlement was to compensate the marital estate for its loss of income and for its medical expenses. *See Heslop,* 967 S.W.2d at 254; *Mistler,* 816 S.W.2d at 251.

However, even if we were to presume part of the settlement was intended to compensate Ms. Blydenburg–Dixon individually or the marital estate jointly, we could not conclude that the settlement had not provided sufficient compensation prior to the dissolution. Over two million dollars of the settlement was received and consumed *during the marriage.* Even if the settlement was also intended to compensate for marital losses, "the trial court could have concluded that the lump-sum payments and pre-dissolution annuity payments ... more than compensated the marital unit for its losses during the marriage." *Mistler,* 816 S.W.2d at 252. Further, despite a settlement's provision for marital losses, the trial court may conclude "that the husband's *post-dissolution* payments were attributable solely to his *post-*

---

**3.** The trial court noted that under Kansas law, Ms. Blydenburg–Dixon would have had no claim to Mr. Dixon's workers' compensation benefits.

*dissolution* economic and noneconomic damages" and validly find those payments to be non-marital property. *Id.* (Emphasis added).

In the present case, while Mr. Dixon's losses are un-repairable, degenerative, and continue after the marriage, Ms. Blydenburg–Dixon has been relieved of the burdens of caring for her former spouse's injuries. Consequently, we see no basis to disturb the trial court's findings that the post-dissolution payments are Mr. Dixon's non-marital property because they compensate for his post-dissolution loss of wages and medical expenses, as well as his pain, suffering, disfigurement, disability, and loss of ability to lead a normal life. *See id.* at 251 n. 11.

■ Moreover, "[o]ur concern ... in reviewing a court-tried case is whether the trial court reached the proper result, not the route taken to reach that result." *In re Marriage of Gerhard,* 985 S.W.2d 927, 932 (Mo.App. S.D.1999). Even if the record offered insufficient evidence to conclude that the post-dissolution annuity payments represent only Mr. Dixon's post-dissolution losses, if the trial court did in fact reach the correct result, "[t]his shortcoming ... does not constitute reversible error." *See Mistler,* 816 S.W.2d at 250. We affirm if the result was correct "on any rational basis." *Heslop,* 967 S.W.2d at 255.

■ In the present case, characterizing the post-dissolution monthly annuity payments as marital would not lead us to the conclusion that the trial court reached an incorrect result. Courts must consider a number of statutory factors for the equitable division of marital property and for granting an award of maintenance, including the resources, contributions, and conduct of each party. *See* § 452.330.1; § 452.335.2. The law also requires provision for a disabled spouse. *Mistler,* 816

S.W.2d at 252–53. Without the award of the post-dissolution monthly annuity payments to Mr. Dixon, the trial court noted these factors would require it to award Mr. Dixon maintenance. The trial court's considerations included, *inter alia:* Mr. Dixon had no other financial resources, his only items of value were devices to care for quadriplegia, he could not meet his needs independently, and Ms. Blydenburg–Dixon was capable of earning a sufficient income through work. The trial court also found the conduct of the parties would dictate such an award. *See* § 452.335.2(9). Its findings—supported by the record—include: Mr. Dixon attempted to curb Ms. Blydenburg–Dixon's spending; she "completely and unnecessarily leveraged and mortgaged the marital home" without Mr. Dixon's consent, causing it to be foreclosed; Ms. Blydenburg–Dixon was having affairs and allowing her lovers to stay in the marital home, despite the daughter's presence and against Mr. Dixon's wishes; and Mr. Dixon had sought orders of protection and "repeatedly revoked powers of attorney allegedly executed by him in favor of [Ms. Blydenburg–Dixon]." Consequently, the record does not show that characterizing the post-dissolution monthly annuity payments as marital would favor awarding anything further to Ms. Blydenburg–Dixon. Because the record supports that the post-dissolution payments were Mr. Dixon's non-marital property and because a different finding would not merit reversal, Ms. Blydenburg–Dixon's first point is denied.

■ Ms. Blydenburg–Dixon next claims a right to receive the monthly annuity payments after Mr. Dixon's death. The settlement agreement provided that the monthly annuity payments were payable "jointly, or all to the survivor ... and continuing for lives of Barney H. Dixon or Karolyn Blydenburg–Dixon" guaranteed

until April 2017, and that in the event of the Dixons' death before April 2017, the guaranteed payments would be made to their daughter. In her second point, Ms. Blydenburg–Dixon argues the trial court erred by "failing to address" her right under this provision and asserts that this deprives us of jurisdiction because the dissolution award was not final. In her third point, she alternatively maintains that if the trial court's award to Mr. Dixon includes those payments after his death, then the trial court erred because she had a "delineated and independent right to receive separate payments ... beyond the life of [Mr. Dixon] and after the dissolution of marriage" and this right was her non-marital property.

First, we do not agree that the trial court's award was not final. The order and judgment states "all the settlement monies ... are found to be Respondent's sole and exclusive non-marital property and are awarded to him." "All" means "the whole of." BLACKS LAW DICTIONARY 74 (6th ed.1990). Accordingly, Mr. Dixon was awarded "the whole of" the remaining payments under the annuity.

 Second, Ms. Blydenburg–Dixon mischaracterizes the nature of the annuity provisions in the settlement agreement provided to this court. She was not given a "post-dissolution" right; the agreement made no provision for dissolution. Further, what Ms. Blydenburg–Dixon has characterized as a "contract right" to receive payment was subject to her outliving Mr. Dixon before the annuity was exhausted. We also note that Ms. Dixon is not a party to an annuity contract. Rather, the Dixons were parties to a settlement agreement, which gave them status as beneficiaries to an annuity.

Third, in support of her argument that she has a "delineated and independent right to receive separate payments ...

beyond the life of respondent and after the dissolution of the marriage," Ms. Blydenburg–Dixon cites only *Mistler* for the proposition that "[a] contractual right which provides payment to a party after the dissolution of marriage is a distinguishable property right." Noticeably, Ms. Blydenburg–Dixon fails to provide us with a pinpoint citation or explain how *Mistler* supports her argument. We believe it does not. In that case, the settlement agreement for the husband's injuries provided directly for a separate monthly payment to the wife in her name alone for forty years, which the record—including a transcript of a settlement conference—showed was for the wife's loss of consortium claim. *Mistler*, 816 S.W.2d at 244. The separate payments to the wife were not at issue and the court did no analysis of the characterization of those payments. *Id.* at 251.

The burden to show error lies with Ms. Blydenburg–Dixon. *See Kirkwood*, 77 S.W.3d at 680. In her brief argument, Ms. Blydenburg–Dixon fails to convince us why our analysis on these latter points should differ from our analysis under her first point. All monies due under the settlement agreement were the proceeds of a personal injury settlement from Mr. Dixon's accident. Section 452.330 authorizes the trial court in a dissolution proceeding to set aside non-marital property and divide marital property. Money received in a personal injury action subsequent to marriage is "property" subject to the court's distribution in a dissolution proceeding. *See Al–Yusuf*, 969 S.W.2d at 785. Contractual rights and survivor benefits may also be subject to the court's distribution. *See e.g. Williams v. Williams*, 17 S.W.3d 559, 562 (Mo.App. E.D.1999); *Conaway v. Conaway*, 899 S.W.2d 574, 576 (Mo.App. W.D.1995). The trial court here employed the analytical approach and

found all remaining settlement monies were Mr. Dixon's non-marital property. Because our analysis is the same, we reach the same result as in point one. Consequently, the trial court did not err in determining that post-dissolution payments due under the settlement agreement were properly characterized as Mr. Dixon's non-marital property.

### Conclusion

For the foregoing reasons, we affirm.

LOWENSTEIN and HOWARD, JJ. concur.