Karel R. SCHUBERT, Appellant,

v.

Karen S. SCHUBERT, Respondent.

No. ED 96511.

Missouri Court of Appeals, Eastern District, Division One.

May 1, 2012.

Susan M. Hais, Elliott I. Golderger, Julie Hixson Lambson, Clayton, MO, for Appellant.

James P. Carmody, Joyce M. Capshaw, Zofia A. Garlicka, St. Louis, MO, for Respondent.

ROY L. RICHTER, Judge.

Karel R. Schubert ("Husband") appeals from the trial court's Judgment of Dissolution of Marriage ("Judgment") between him and Karen Schubert ("Wife"), *inter alia,* imputing income to Husband, awarding Wife maintenance and child support, classifying certain property as marital or non-marital, valuing and dividing the property, and awarding Wife attorney's fees. We reverse and remand on the issue of maintenance, and the court shall thereafter

re-calculate child support; we affirm in all other respects.

## I. Background

Husband and Wife were married on December 26, 1967. Two children were born of the marriage and one child, Daughter, remains un-emancipated at approximately age 20. The parties separated on May 24, 2007, and the dissolution of marriage proceeding commenced on November 21, 2008. The trial court conducted a trial on the petition for dissolution of marriage on February 8–9, 2010, and June 16 and 23, 2010. The trial court entered its Findings of Fact, Conclusions of Law and Judgment of Dissolution of Marriage on December 13, 2010, *inter alia,* calculating maintenance and child support, to which Husband was ordered to pay Wife, dividing the parties' separate and marital property and debts, and ordering Husband to pay Wife's attorney's fees. This appeal follows. We will discuss the facts in greater detail as they relate to the issues on appeal.

## II. Discussion

Husband raises nine points on appeal, alleging the trial court erred in its Judgment dissolving the marriage between him and Wife. We will discuss each point individually in the order in which it is raised.

**Standard of Review**

We review a non-jury case under Rule 73.01(c). The trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We defer to the trial court's determinations of credibility and view the evidence and the inferences that may be drawn therefrom in the light most favorable to the judgment. *Vinson v. Adams,* 192 S.W.3d 492, 494 (Mo.App. E.D.2006).

### Point I—Imputation of Husband's Income

In his first point, Husband alleges the trial court erred in imputing income of $7,300 per month to him because there was no substantial evidence to support the ruling and it was contrary to the evidence that Husband was voluntarily unemployed or that Husband could earn such amount. Husband argues that he was terminated from his previous position, he was a whistleblower, and he signed a non-compete, and despite Husband's best efforts to obtain employment elsewhere, in applying to more than sixty jobs, he had not been offered a position.

"In proper circumstances, a trial court may impute income to a party according to what that party could earn by using best efforts to gain employment suitable to [his] capabilities." *Sabatino v. Sabatino,* 314 S.W.3d 854, 860 (Mo.App. W.D. 2010). "What constitutes the appropriate circumstances to impute income is fact-dependent and must be determined case-by-case." *Payne v. Payne,* 206 S.W.3d 379, 385 (Mo.App. E.D.2006). Factors to consider include the party's work history during any relevant time period, his qualifications, employment potential, the availability of employment, and whether the parent is the custodian of a child. *Pickering v. Pickering,* 314 S.W.3d 822, 836 (Mo. App. W.D.2010).

The trial court considered that Husband was last employed by Danforth Center in February 2007, at which time his annual salary was approximately $173,000. Husband had negotiated severance pay representing approximately 1.6 years of his annual compensation, amounting to $288,271, plus his attorney's fees of approximately $36,750. The trial court also considered that Husband earned a bache-

lor's degree in chemistry, a master's degree in biochemistry, and a doctorate degree in biochemistry, and was employed at various universities as an assistant professor, associate professor, and professor working in biochemistry, biology, botany, or microbiology for approximately 25 years. He also was employed as a research manager with Monsanto Company in St. Louis, and then from 2000–2007, an administrative assistant to the president or vice president at the Danforth Center. Husband was the family's sole wage earner during the parties' marriage.

Although Husband presented testimony from an expert psychologist/career coach regarding his earning capacity, the trial court noted that even Husband's expert found it "strange" that Husband had been unemployed for the last three years, and the expert did not render an opinion regarding the income Husband is capable of earning. The trial court found no credible evidence to support Husband's theory that he was being "blackballed" by Danforth Center, and that Husband's separation agreement with the company contradicted Husband in this respect. The trial court found the evidence presented by Wife's vocational expert, including a report concerning Husband's employability, was indeed credible and that accordingly, Husband has the capacity to earn a total monthly income of approximately $7,300.

The trial court's judgment was supported by substantial evidence. Husband and Wife offered separate vocational experts who presented differing opinions about Husband's ability to obtain employment. The trial court found that Wife's expert was more persuasive, and even Husband's expert did not fully support Husband's position. Given the standard of review, there are not sufficient grounds for reversing the trial court's factual determinations.

Husband's first point is denied.

### Point II—Wife's Maintenance Award

In his second point, Husband argues that the trial court abused its discretion in awarding Wife $2,500 per month in maintenance because (A) Wife's reasonable needs could be met through income from the marital and separate property awarded to Wife and through her employment; (B) the trial court erroneously calculated Wife's reasonable needs in including items not supported by the evidence; and (C) the amount of maintenance was unsupported by the evidence in that Husband could not afford to pay such sums of maintenance while meeting his own reasonable needs because income was improperly imputed, which was not considered by the court.

The trial court can award maintenance only if it finds that the party seeking maintenance: "(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) Is unable to support himself through appropriate employment." Section 452.335.1 [1]; *D.K.H. v. L.R.G.*, 102 S.W.3d 93, 103 (Mo.App. W.D.2003). In applying this standard, the trial court must first determine the reasonable needs of the party seeking maintenance. *Id.* After the court determines the party's reasonable needs, the court must then determine whether the party "is able to provide for these needs through use of property or appropriate employment." *Id.*

First, Husband argues that the trial court erroneously calculated Wife's reasonable needs were $4,750 per month, because in fact, only $2,160 per month was supported by the evidence. Therefore, Husband argues Wife's needs could be met by

1. All statutory references are to RSMo 2000 as supplemented, unless otherwise indicated.

the income from the marital and separate property awarded to Wife and through Wife's employment. Thus, we first analyze whether the trial court erred in calculating Wife's reasonable expenses to be $4,750 per month.

Missouri follows the general rule that awards of spousal maintenance and child support are two distinctly separate concepts, and that maintenance does not include child support. *Atchley v. Atchley*, 334 S.W.3d 709, 714 (Mo.App.E.D. 2011). Maintenance payments are limited to the needs of the recipient. *Id.* Furthermore, Section 452.335 governing spousal maintenance does not provide that amounts spent for the direct care and support of a child who lives with the spouse seeking maintenance may be included in determining the need for maintenance. *Id.* Expenses for a child's medical and dental insurance, car insurance, vehicle, and college are considered to be a form of child support. *Shands v. Shands*, 237 S.W.3d 597, 601 (Mo.App. S.D.2007).

Here, Wife's Statement of Income and Expense listed $815 per month for health and accident insurance, $151 per month for homeowners insurance, and $250 per month for automobile expenses, for a total of $1,216 per month. Wife testified she was providing insurance for Megan, did not have insurance herself, but was seeking employment with a benefits package to obtain health insurance. The trial court found that the insurance cost attributable to Megan was $446 per month on the Form 14. Additionally, Wife testified that her expenses included $250 per month in automobile insurance for both her and her children. The trial court found that Wife's reasonable monthly expenses include approximately $1,216 "for various insurance payments, including health insurance coverage for Wife and Megan." Because "[t]he child's needs

should not be included in the maintenance calculation," *Buchholz v. Buchholz*, 166 S.W.3d 146, 158 (Mo.App. S.D.2005), we reverse and remand the maintenance award, including Wife's reasonable needs, for the trial court's reconsideration, consistent with this opinion.

After the court determines the party's reasonable needs, the Court next determines whether the party "is able to provide for these needs through use of property or appropriate employment." *D.K.H.*, 102 S.W.3d at 103. The court imputed $25,000 per year, or $2,100 per month in employment income to Wife from the evidence presented by both Wife's vocational expert as well as Husband's. Based on the court's findings of Wife's total monthly expenses, Husband's ability to pay the maintenance while still meeting his own reasonable needs, the conduct of both parties during the marriage, the standard of living the parties enjoyed during the marriage, and the disparity between the parties' earning capacity, the court found that it is "reasonable and appropriate under the facts and circumstances that Husband pay to Wife the sum of $2,500.00 per month as and for modifiable income." Although the trial court stated that it considered "all evidence bearing upon the statutory factors of [Section] 452.335 RSMo, in making its determination concerning Wife's request for spousal maintenance," we find the court failed to consider the financial resources of Wife, including the income-producing property apportioned to her.

A spouse is not required to deplete or consume his or her portion of the marital assets before being entitled to maintenance. *Pearson v. Pearson*, 22 S.W.3d 734, 737 (Mo.App. W.D.2000). However, the interest one can earn from his or her share of the marital property

must be considered when determining whether he or she is in need of maintenance thereof. *Breihan v. Breihan,* 73 S.W.3d 771, 778 (Mo.App. E.D.2002). "Failure to consider the recipient spouse's reasonable expectation of income from investment of the marital property constitutes error." *Id.* at 778–79. A trial court determines the amount of income imputed from retirement and IRA accounts based on the facts and circumstances of each case—including the cost to convert the account into cash, the age of the parties, their intent as to investment/consumption/retirement, the relative division of marital property and marital debts, and any equitable adjustment for reasonably certain taxes and penalties. *Hill v. Hill,* 53 S.W.3d 114, 116 (Mo. banc 2001). Maintenance should not be awarded for the purposes of building an estate or accumulation of capital. *Id.* "[T]he burden of showing adverse tax consequences must be established with particularity at trial if they are to be considered on appeal." *Linton v. Linton,* 117 S.W.3d 198, 206 (Mo.App. S.D.2003).

In *Hill,* the trial court had valued the $500,000 in IRA and retirement accounts for purposes of division of marital property at their cash value, but refused to impute any significant income from them to meet the nearly 59–year–old wife's reasonable needs. *Hill,* 53 S.W.3d at 116–17. Although the Missouri Supreme Court held that trial courts were not required to include or exclude income attributable to retirement and IRA accounts awarded as marital property in the calculation of maintenance awards, it did require trial courts to "consider" such income when calculating maintenance. *Id.* at 116. The Court reversed the judgment, finding that the trial court abused its discretion in ruling that the retirement assets apportioned to the wife were not readily available and thus excluded from the maintenance calculation, despite valuing the retirement assets at their cash value for purposes of the division of marital property. *Id.*

Here, the trial court awarded to Wife 60% of the net proceeds from the sale of the marital residence, as well as multiple bank accounts, retirement accounts, and a cash payment from Husband, totaling more than $1 million. The parties have not directed us to and we have not found evidence in the record regarding income from the marital retirement or IRA funds awarded to Wife that the trial court could or did consider when calculating maintenance. Nothing in the Judgment discloses either what income from the funds awarded to Wife was considered by the trial court in calculating the maintenance award, or the underlying information specified in *Hill* to determine what income from those funds the trial court considered in calculating the maintenance award—including the cost to convert the account into cash, the age of the parties, their intent as to investment/consumption/retirement, the relative division of marital property and marital debts, and any equitable adjustment for reasonably certain taxes and penalties. *Id.* Wife argues on appeal that because Husband presented no evidence of a reasonable rate of return on these assets at trial, interest income cannot be supported by the evidence. We disagree. *See N.M.O. v. D.P.O.,* 115 S.W.3d 854, 858 (Mo.App. E.D.2003).

We reverse and remand the maintenance award also based on Wife's ability to provide for her reasonable needs. The parties may present additional evidence on these issues highlighted in *Hill,* discussed *supra.* After the trial court determines Wife's reasonable needs, the trial court shall reconsider this portion of Wife's abili-

ty to provide for her reasonable needs.[2]

Husband's second point is granted.

### Point III—Child Support Award

In his third point, Husband contends the trial court erred in requiring Husband to pay $803 per month in child support because Daughter was emancipated and no longer entitled to support under Section 452.340 in that she was over the age of 18 and she did not qualify for support under Section 452.340.5 because she failed to notify Husband of her enrollment in college, her grades, and her transcripts, and failed to satisfy the minimum credit hour requirements, and there was no sufficient evidence to support a finding that she was physically or mentally incapacitated under Section 452.340.4, or that the incapacitation occurred prior to her eighteenth birthday. Further, Husband argues, even if entitled to support, the support amount was not supported by sufficient evidence in

that Daughter's reasonable needs were less than the "total combined child support costs" on the Form 14 and the court did not make findings as to why the Form 14 should not have been rebutted.

██ Generally, the obligation of a parent to support a child ends at the age of 18. Section 452.340.3(5); *Sullins v. Knierim*, 308 S.W.3d 241, 246 (Mo.App. E.D.2010). Section 452.340.5 extends a parent's support obligation beyond age 18 when a child pursues higher education. In order for the obligation to continue until age 21, the student must: register by October 1 following high school, provide institutional documentation to the parent paying support, continue to attend and progress toward completion of the program, and be enrolled in either 12 credit hours per semester or 9 credit hours while employed at least 15 hours per week. Section 452.340.5.[3]

---

**2.** Although the trial court failed to consider a significant aspect of Wife's ability to provide for her reasonable needs here, we acknowledge that the parties failed to present evidence regarding such interest income Wife would earn from the property awarded to her, and thus, the trial court's findings would have been speculative at best.

**3.** The text of Section 452.340.5 states as follows:

If, when a child reaches age eighteen, the child is enrolled in and attending a secondary school program of instruction, the parental support obligation shall continue, if the child continues to attend and progresses toward completion of said program, until the child completes such program or reaches age twenty-one, whichever first occurs. If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school or completion of a graduation equivalence degree program and so long as the child enrolls for and completes at least twelve hours of credit each semester, not including the summer semester, at an institution of vocational or higher education and achieves grades suffi-

cient to reenroll at such institution, the parental support obligation shall continue until the child completes his or her education, or until the child reaches the age of twenty-one, whichever first occurs. To remain eligible for such continued parental support, at the beginning of each semester the child shall submit to each parent a transcript or similar official document provided by the institution of vocational or higher education which includes the courses the child is enrolled in and has completed for each term, the grades and credits received for each such course, and an official document from the institution listing the courses which the child is enrolled in for the upcoming term and the number of credits for each such course.... Upon request for notification of the child's grades by the noncustodial parent, the child shall produce the required documents to the noncustodial parent within thirty days of receipt of grades from the education institution. If the child fails to produce the required documents, payment of child support may terminate without the accrual of any child support arrearage and shall not be eligible for re-instatement. If circumstances of the child manifestly dictate, the

■■ "The notification requirements of section [452.340.5] are designed to make sure that the non-custodial parent can insure that their children are using [their] child support payments to actually obtain a college education." *Peine v. Peine*, 200 S.W.3d 567, 573 (Mo.App. W.D.2006) (internal citations omitted). If a student fails to comply with the notification requirements for a given semester, Section 452.340.5 functions to relieve the obligated parent from paying support. *Shands v. Shands*, 237 S.W.3d 597, 601–02 (Mo.App. S.D.2007). Prior to 2007, Section 452.340.5 had been interpreted to mean that a failure to comply with the notification requirements merely abated the child support obligation for that semester. *In re Marriage of Noland–Vance*, 344 S.W.3d 233, 239 (Mo.App. S.D.2011); *Shands*, 237 S.W.3d at 602. In response to court decisions abating child support obligations, Section 452.340.5 was amended by the legislature in 2007, to include the following language:

> Upon request for notification of the child's grades by the noncustodial parent, the child shall produce the required documents to the noncustodial parent within thirty days of receipt of grades from the educational institution. If the child fails to produce the required documents, payment of child support may terminate without the accrual of any child support arrearage and shall not be eligible for reinstatement.

*In re Marriage of Noland–Vance*, 344 S.W.3d at 239. Accordingly, our courts have read the amendment's plain language as the trial court's "discretionary authority to terminate, rather than simply abate," a

parent's obligation to pay child support. *Id.* at 240.

■ The first rule of statutory interpretation is to ascertain the intent of the legislature from the language used, by considering the words in their plain and ordinary sense. *S. Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. banc 2009). We are conscious that "it is the function of the courts to construe and apply the law and not to make it." *Renner v. Dir. of Revenue*, 288 S.W.3d 763, 765 (Mo.App. E.D.2009) (citation omitted). We do not construe clear and unambiguous language, but if an ambiguity exists, we will attempt to read the statute in a way that does not render an absurd result. *Id.* In reading the statute, we look not to an isolated sentence, but rather to the provisions of the law in its entirety, and to its object and policy. *Id.* at 766.

■ Because Missouri public policy encourages children to pursue higher education, this Court will liberally construe the continuing-education requirements. *Rozelle v. Rozelle*, 320 S.W.3d 225 (Mo. App. E.D.2010). Where the evidence demonstrates that the child intends and has taken the necessary steps to complete his education but is unable to complete some classes due to a learning disability or medical condition, then emancipation is not appropriate. *Sullins*, 308 S.W.3d at 248–49. Moreover, the party seeking emancipation and termination of child support has the burden of showing facts that prove emancipation. *Rozelle*, 320 S.W.3d at 228.

■ Here, the evidence demonstrated, and the trial court found that Daughter

---

court may waive the October first deadline for enrollment required by this subsection.... A child who has been diagnosed with a developmental disability, as defined in section 630.005, or whose physical disability or diagnosed health problem limits the child's ability to carry the number of

credit hours prescribed in this subsection, shall remain eligible for child support so long as such child is enrolled in and attending an institution of vocational or higher education, and the child continues to meet the other requirements of this subsection....

turned 18 years old in September 2008, but was suffering severe health conditions at that time, preventing her from enrolling by the required October 1, 2008 deadline. Daughter began actively pursuing her education and was in good standing at the Metropolitan Community College in Kansas City the following semester, in the Spring of 2009, but her medical condition then prevented her from enrolling in the full 12 credit hours. Section 452.340.5 carves out an exception to the October 1 deadline "[i]f the circumstances of the child manifestly dictate," allowing the court to waive the deadline for enrollment. Further, the statute allows that a child whose "diagnosed health problem limits the child's ability to carry the number of credit hours prescribed in this subsection, shall remain eligible for child support so long as such child is enrolled in and attending an institution of vocational or higher education, and the child continues to meet the other requirements of this subsection." Section 452.340.5.[4] Thus, the trial court properly determined that Daughter should remain unemancipated and was exempt from taking the required number of credits under the statute.

■ Having established that Daughter's medical condition extended Husband's child support obligation while she was enrolled in an institute of vocational or higher education, we next consider whether Daughter met the other requirements of the statute. Husband argues that she did not meet the notice requirements, and thus, his child support obligations should terminate under Section 452.340.5. Husband testified at trial that he was not aware that Daughter was in college until the deposition, and she never provided him any documentation for courses or grades despite his attempt to correspond with her regarding that matter. No evidence was presented to show that Husband made a specific request for notification of Daughter's grades. Daughter testified at trial that she had not provided a copy of her transcript to her father or told him about how many classes she was taking. Finally, Wife testified that she never advised Husband that Daughter was attending a community college, nor had she provided Husband with Daughter's transcript of courses or grades.

The evidence showed, and the trial court found, that Husband was not involved in Daughter's life for the most part before the parties separated, and Daughter had not spoken to Husband since approximately December 2007. Daughter was aware of Husband's extramarital affairs and did not wish to have visitation with Husband. Daughter was approximately 20 years old at the time of the trial court's Judgment, in December 2010. The trial court ordered that Husband's obligation to pay Wife child support is retroactive to January 1, 2010. The trial court found that Daughter "shall continue to be entitled to child support from Husband as long as [Daughter] continues to comply with all other notice provisions of Section 452.340.5."

Here, it is undisputed that neither Daughter nor Wife provided Husband with documentary proof of Daughter's enrollment in community college by the beginning of her first semester enrolled there. Although the required documentation was not provided to Husband, the use of the

---

4. The exception under Section 452.340.5 allowing a child "whose physical disability or diagnosed health problem limits the child's ability to carry the number of credit hours prescribed in this subsection" to remain eligible for child support is separate and in addition to the exception for a child "diagnosed with a developmental disability, as defined in section 630.005," to which Husband argues is not applicable.

term "may" in Section 452.340.5 "implies alternate possibilities and that the conferee of the power has discretion in the exercise of the power." *Stuart v. Ford,* 292 S.W.3d 508, 520 (Mo.App. S.D.2009). Pursuant to the plain language of the 2007 amendment to Section 452.340.5, the trial court had the discretionary authority to terminate Husband's obligation to pay child support for Daughter. The trial court's Judgment, however, ordered Husband to pay child support, and gave Daughter time to comply with the notification requirements.[5] Upon review of the record and the statute, we find the trial court could reasonably conclude that terminating child support was contrary to the purpose of child support and the public policy of encouraging a child's pursuit of higher education. Similarly, exempting Husband from paying child support due to the lack of notice he received stands contrary to Husband's non-communicative approach to parenting Daughter. Thus, we find that the trial court did not abuse its discretion in ordering Father to pay child support "as long as [Daughter] continues to comply with all other notice provisions of Section 452.340.5."

 Furthermore, Husband argues that the support amount ordered by the trial court was not supported by sufficient evidence in that Daughter's reasonable needs were less than the "total combined child support costs" on the Form 14 and the court did not make findings as to why the Form 14 should not have been rebutted. "To permit a party who did not file a Form 14 with the trial court to appeal child support decisions is akin to pursuing a different theory of recovery on appeal than was pursued at trial." *Basham v. Williams,* 239 S.W.3d 717, 724 (Mo.App. S.D.2007). Father's failure to file a Form 14 precludes appellate review of his argument that the child support award found by the trial court was not supported by the evidence.

Husband's third point is denied. Nevertheless, because the calculation of child support is dependent upon the award of maintenance, if any, the trial court is directed to prepare an amended Form 14 and recalculate Husband's child support obligation.[6]

### Point IV—Insurance Check: Wife's Separate Property

In his fourth point, Husband alleges the trial court erred in finding the proceeds of the State Farm insurance check were Wife's separate property because Wife failed to present clear and convincing evidence that the check was intended to compensate for non-marital losses, in that the check was payable to Husband and Wife, Husband testified the check compensated for the loss of a marital automobile, and Wife testified the check was intended to compensate for her medical care, which is a marital loss.

 Property acquired during the marriage is presumed to be marital. Section 452.330. Thus, a spouse claiming separate property must support the claim by clear and convincing evidence. *Blyden-*

---

5. A child is obligated to comply with the notification requirements once the parents' dissolution proceedings have been commenced, even before there is a judgment of dissolution. *McFadden v. McFadden,* 200 S.W.3d 594, 598 (Mo.App. W.D.2006). The parent receiving child support may also provide the requisite information to the obligated parent. *Id.* at 598 n. 2.

6. If Wife is granted maintenance on remand, the court should correct the error by including the amount of maintenance awarded when it recalculates child support on the amended Form 14.

burg–Dixon v. Dixon, 277 S.W.3d 815, 819 (Mo.App. W.D.2009). A settlement for a personal injury claim occurring during the marriage may be both marital and non-marital. Id. To determine whether funds from a personal injury settlement are marital or non-marital, Missouri uses the "analytical" approach. Id. Also known as "replacement analysis," the settlement award is classified by what it is meant to replace. Id. To determine the intent of a settlement, a court may look to what the parties would have received if the claims had been adjudicated. Id. at 820. Personal injury awards may qualify as non-marital property if they are intended to compensate for separate, non-marital losses; the awards are marital property if they compensate for marital losses. Al–Yusuf v. Al–Yusuf, 969 S.W.2d 778, 786 (Mo.App. W.D.1998).

The insurance check for $28,400 issued by State Farm indicates on its face that it is for "Bodily Injury" rather than property damage or medical expenses. The evidence demonstrates that Wife suffered injuries as well as property damage in an automobile accident in 2005. She received medical attention following the accident. Husband was not in the car at the time of the accident. The trial court found that Wife presented credible evidence that the insurance check money "was to compensate Wife for pain and suffering associated with personal injuries sustained by Wife resulting from an automobile accident and these proceeds were not for the value of Wife's automobile." From this clear and convincing evidence presented at trial and found on the record, we find that the trial court did not err in concluding that the insurance check compensated Wife for non-economic bodily injuries.

Point four is denied.

### Point V—Husband's Settlement with Danforth Center

In his fifth point, Husband argues the trial court misapplied the law in holding the proceeds from his settlement with the Danforth Center was marital property, in that the credible evidence showed the settlement was Husband's separate property because the settlement was intended to substitute for future lost earnings, stated that specifically, and thus, was the same as post-dissolution earnings. Husband argues that he entered into a settlement with Danforth Center for a payment of $288,271, in exchange for any claims Husband may have had against Danforth, which represented future lost wages. Because the agreement with Danforth stipulated the proceeds were for future lost wages, Husband argues, it is Husband's separate property. We disagree.

The trial court found that Husband's severance payment in March 2009 of approximately $288,271, represented approximately 1.6 years of Husband's annual compensation, which had been approximately $173,000 per year at the time Husband was terminated from Danforth, in February 2007. In applying the analytic approach, the trial court found that Husband's severance pay replaced his earnings for a period of more than three years during the parties' marriage. "[B]ased on the credible evidence adduced," the trial court found the severance pay at issue is marital property and subject to division by the court.

Again, to classify property, including severance pay, as marital or non-marital, Missouri uses an analytic approach, or a replacement analysis. Brill v. Brill, 65 S.W.3d 583, 586 (Mo.App. S.D.2002). Under this analysis, the questioned asset, property or benefit is classified based upon what it is meant to replace. Id. "[T]he touchstone of the classification is whether

severance pay was intended to compensate the employee for efforts made during the marriage or to replace post-separation earnings." *Id.* (quoting *Luczkovich v. Luczkovich*, 26 Va.App. 702, 496 S.E.2d 157, 160 (1998)). A payment meant as a substitute for future lost earnings, or earnings that occur post-dissolution, is non-marital property. *Id.*

In *Brill*, the Southern District considered the issue of first impression as to whether severance payments constituted marital property. 65 S.W.3d at 586. The husband, at the time of the dissolution, had a Severance Pay Agreement with his employer, which provided him with severance pay contingent upon specific future events. *Id.* In its findings, the trial court noted that in defined circumstances under the husband's severance pay contract, the husband has an employment contract which provides for up to three years of continued salary in the event of the husband's loss of employment. *Id.* at 587. Based on this unchallenged finding, the Southern District held on appeal that "the severance pay contract merely provides a substitute for possible lost earnings in the future, it is the same as post-dissolution earnings and is non-marital within the meaning of [Section] 452.330." *Id.*

Distinguished from *Brill*, here the trial court made no finding that the severance payment was a substitute for future earnings. Instead, the trial court made a finding that the severance payment replaced Husband's earnings for a period of more than three years during the parties' marriage. The evidence on the record supports the finding in that the severance payment was given to Husband during the marriage, was based on his termination from Danforth Center during the marriage, and was valued based on work completed at Danforth Center during the marriage. Notably, Wife has spent most of

the last 40 years as a homemaker caring for the parties' two children, which contributed to Husband's ability to be in such a position at Danforth Center and, thus, able to negotiate and receive the severance pay he did. The severance payment was not contingent on any future events, and was not intended to be future earnings beyond the time the parties were divorced. Husband has not shown by clear and convincing evidence why his severance payment should be separate rather than marital property.

Husband's fifth point is denied.

### Point VI—Husband Dissipated Marital Funds

In his sixth point, Husband contends the trial court erred in holding he had dissipated marital funds and in failing to find that Wife had also dissipated marital funds. Husband argues the court's holding misapplied the law and was not supported by substantial evidence because (A) there was no restraining order and Husband presented the court with testimony and corroborating bank records regarding his use of the allegedly dissipated funds, and showed that either the funds were used during unemployment for ordinary living expenses including paying the parties' taxes or was otherwise available for the court to divide, including a Roth and SEP IRA and (B) Wife failed to adequately account for how she spent approximately $161,000 in marital funds, holding her to a different standard than Husband.

The trial court found that Wife presented credible evidence of Husband's extensive dissipation of marital assets, specifically, spending more than $354,484 in less than two weeks prior to the commencement of trial and without Wife's knowledge. The court found, from the credible evidence adduced, that Husband's use of assets on the eve of trial constitutes dissipation, and therefore considered that as a

factor in the division of marital property. The court also found from the credible evidence that Wife's use of funds was reasonable and did not constitute dissipation of marital assets.

"'[A]s a general rule, the appropriate date for valuing marital property in a dissolution proceeding is the date of trial.'" *Farnsworth v. Farnsworth*, 108 S.W.3d 834, 841 (Mo.App. W.D.2003) (quoting *Conrad v. Conrad*, 76 S.W.3d 305, 314 (Mo.App. W.D.2002)). "Thus, under this rule, if a marital asset does not exist at the time of trial, the trial court cannot value and include that asset in its division of marital property.'" *Id.* However, where a party has intentionally secreted or squandered a marital asset in anticipation of the marriage being dissolved, the court may hold that party liable for the amount of the asset by awarding it to him or her in its division of the marital property. *Wright v. Wright*, 1 S.W.3d 52, 62 (Mo.App. W.D. 1999). This effectively reduces that party's property award by the squandered amount. *Id.* A trial court does not have to specifically find that it believes monies have been secreted or squandered in anticipation of divorce, because its actions can imply such a conclusion where sufficient evidence exists to support the conclusion. *McGowan v. McGowan*, 43 S.W.3d 857, 866 (Mo.App. E.D.2001). The court is free to disbelieve a witness' testimony or vague accounting that [the witness] used expended money for living expenses. *Schneider v. Schneider*, 824 S.W.2d 942, 947 (Mo. App. E.D.1992).

The evidence presented at trial showed that Husband spent at least $354,484 between the time of his deposition on January 25, 2010, and trial on February 8, 2010. The evidence showed that Husband depleted large sums of money from several accounts to pay his attorney fees and litigation expenses, pre-pay taxes, and give to Husband's elderly parents. The evidence showed that Wife was unaware of these payments and did not authorize Husband to make them. Based on the timing of these expenditures, and the facts that Husband's expenses were not routine or authorized by Wife, we find there was sufficient evidence for the trial court to conclude that Husband was trying to secrete the funds from consideration by the court. If a party secretes property in anticipation of a divorce, the court may order reimbursement. *Calia v. Calia*, 624 S.W.2d 870, 872 (Mo.App. W.D.1981). Consequently, we find no abuse of discretion regarding the trial court's findings and conclusions.

Husband's sixth point is denied.

### Point VII—Court's Reliance on Property Values

In his seventh point, Husband alleges the trial court erred in relying on out-of-date property values and out-of-date evidence regarding the parties' economic circumstances to divide the marital property, award maintenance and child support, and award attorney's fees, both trial and appeal, because the valuation of property was not reasonably proximate to the date of division, in violation of Sections 452.330, 452.335, and 452.355. Husband argues the evidence regarding the parties' economic circumstances did not reflect their current circumstances as of the date of the judgments, in that much of the marital property was market based and thus subject to the volatile market changes, and relying upon stale evidence regarding the parties' economic circumstances limited the court from considering the changed economic circumstances of the parties between the time the stale evidence was heard and the time the court entered its judgment. Further, Husband argues that said evidence was speculative. We disagree.

When dividing marital property and marital debts, a trial court is required by Section 452.330.1 to consider the economic circumstances of the parties at the time the division is to become effective. *McCallum v. McCallum,* 128 S.W.3d 62, 66–67 (Mo.App. E.D.2004). To do so, valuation of the parties' marital property must be reasonably proximate to the trial date or distribution of the marital property. *Id.* at 66. Reversal is necessary only when the error is material—that is, "there must be facts in the record from which potential prejudice reasonably could be inferred and each case is therefore fact specific." *Id.*

In the trial court's judgment, it listed marital property and debts awarded to Wife and to Husband. The court awarded Wife 60 percent of the following: the net proceeds from the sale of the marital residence, Husband's Monsanto Pension and Savings Plan, Wife's TIAA–CREF Roth IRA accounts, Husband's TD Ameritrade Roth IRA, Wife's TD Ameritrade Roth IRA accounts, Husband's TIAA–CREF Retirement Portfolio, Husband's Teachers Retirement System of Oklahoma funds, and Husband's Huntington Bank SEP–IRA. The trial court awarded the remaining 40 percent of these assets to Husband. Additionally, the trial court awarded Wife with three other accounts, one of which was an account in the name of Wife and Daughter, having a collective balance of approximately $2,420. The trial court also awarded Husband numerous other accounts in Husband's individual name, totaling nearly $100,000, an account in the names of Oscar and Phoebe Schubert totaling more than $5,000, and shares of stock totaling at least $18,000, but the exact value unknown. The court further required Husband to pay to Wife an additional sum of $247,608 and the sum of $21,640 to make the overall property division equitable and just.

Husband argues that the lapse of time and potential fluctuation in the valuations show prejudice here. He argues as an example, his TIAA–CREF Portfolio was valued at $866,800 at trial, but this account alone had increased approximately $9,500 in four-and-a-half months. In arguing such, Husband has failed to show how the trial court's division of marital property based on a 60/40 split would prejudice him in any way. Any change in property value would apply equally to both parties. Further, if the portfolio Husband uses here as an example is demonstrative of the increases in value his numerous other individual accounts have gained, Husband's assets should have increased significantly. Wife, on the other hand, stands to gain nothing more as her award of $2,420 in bank accounts and set payments from Husband will not yield her significant increases. Thus, we cannot infer from the facts in the record here any potential prejudice to Husband. The trial court did not err in its reliance on the property values and economic circumstances it did to divide the marital property, award maintenance and child support, and award attorney's fees.

Husband's seventh point is denied.

### Point VIII—Property Divided 60/40

In his eighth point, Husband contends the trial court abused its discretion and erroneously applied the law in awarding Wife a vastly disproportionate amount of marital property, because there was no substantial evidence to support a disproportionate division, in that (A) there was insufficient evidence that Husband's extra-marital affairs, occurring 10 to 40 years before dissolution, placed an extra burden on the marriage, and the credible evidence showed it was Wife's misconduct which led to the breakdown of the marriage; and (B) there was no credible evidence that Husband's alleged dissipation placed an unrea-

sonable burden on the marriage, nor was it actually dissipation rather than simply expenditures for ordinary living expenses.

■ As noted in our discussion of Husband's seventh point, *supra,* the trial court divided the marital property disproportionately, 60/40, in favor of Wife. The trial court reasoned that Husband's marital misconduct and dissipation of funds warranted such a division. Husband argues that these reasons were not supported by substantial and credible evidence. We disagree.

The trial court has discretion in dividing marital property, unless the division violates *Murphy v. Carron,* discussed *supra,* or is so one-sided as to be an abuse of discretion. *In re Marriage of Woodson,* 92 S.W.3d 780, 785 (Mo. banc 2003). An abuse of discretion occurs only if the decree is so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration. *Id.*

Section 452.330.1 governs the trial court's division of property in a dissolution and sets forth a two-step process for division of property: (1) the court must first set aside to each spouse his or her nonmarital property; and (2) then divide the marital property and debts in such proportions as the court deems just. *In re Marriage of Reese,* 155 S.W.3d 862, 869 (Mo. App. S.D.2005). In dividing the marital property, the trial court is required to consider "all relevant factors" including the following:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

Section 452.330.1. While a 60/40 division of property is not equal, the Missouri Supreme Court has held that this division neither violates *Murphy v. Carron,* nor is it so one-sided as to be an abuse of discretion. *See In re Marriage of Woodson,* 92 S.W.3d at 785.

The evidence here showed that Husband's economic circumstances are far superior to Wife's, especially in comparing Husband and Wife's earning potential. Although Husband alleged Wife committed spousal abuse and was unfaithful, the trial court found Husband's testimony was not credible. Even if the court had believed Husband, by comparison, Husband's conduct during the marriage was far more egregious, having multiple extra-marital affairs, including one lasting more than five years. Further, the evidence presented at trial supports the trial court's conclusion that Husband dissipated marital funds, as discussed in Point VI, *supra.* Based on the evidence in the record, we find that the trial court did not abuse its discretion in awarding 60 percent of the marital property to Wife and 40 percent to Husband. The trial court's Judgment is supported by substantial evidence, it is not against the weight of the evidence, and it does not erroneously declare or apply the law. *Murphy,* 536 S.W.2d at 32.

Husband's eighth point is denied.

### Point IV—Attorney's Fees

In his ninth and final point, Husband claims the trial court erred in awarding $128,676 in attorney's fees for the trial and

appeal in that the award constituted an abuse of discretion because (A) the court's reasoning for awarding Wife trial attorney's fees (i.e., that Husband had greater control of resources, paid his attorneys more from marital funds, did not support Wife or Daughter during the case, dissipated marital funds, and was uncooperative with discovery) were not supported by credible evidence; (B) the awards of attorney's fees were not based upon the current financial circumstances of Husband; and (C) Husband did not have an ability to pay such awards and that Wife had 70 percent of the assets.

■■■ "Generally speaking, parties to a domestic relations case are responsible for paying their own attorney's fees." *Ethridge v. Ethridge*, 239 S.W.3d 676, 684 (Mo.App. E.D.2007). A trial court may award attorney's fees pursuant to Section 452.355.1 after considering "all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action." *Id.* The trial court has broad discretion in awarding or denying a party's request for attorney's fees, and we will not overturn a trial court's order absent a showing that the trial court abused its broad discretion in ordering, or in refusing to order, one party to pay the attorney's fees of the other party. *In re Marriage of Brown*, 310 S.W.3d 754, 758–59 (Mo.App. E.D.2010). "The trial court is considered an expert as to the necessity, reasonableness, and value of attorney's fees and thus, the trial court's decision is presumptively correct." *Kelly v. Kelly*, 340 S.W.3d 673, 680 (Mo.App. W.D.2011). The complaining party has the burden of showing that the trial court abused its discretion. *In re Marriage of Brown*, 310 S.W.3d at 759.

■■■ On appeal, the party seeking attorney's fees must show the extent of the necessary services to be rendered by counsel and the related expenses. *Potts v. Potts*, 303 S.W.3d 177, 196 (Mo.App. W.D. 2010). The court must consider the financial history of the parties since dissolution, debts of each party, and employment or non-employment income of each party. *Id.* Again, the trial court is considered to be an expert on attorney's fees. *Id.*

■■■ Here, the trial court considered the statutory directives in Section 452.355. The trial court noted that Husband had "control of greater marital financial resources than Wife," and that Husband's attorneys were paid significantly more than Wife's attorneys. Further, Husband liquidated marital assets to pay his attorney's fees without Wife's approval, dissipated marital funds, and made no efforts to support Wife or Daughter during the pendency of the case. Moreover, the trial court noted that Husband was not cooperative during discovery, and his unreasonable behavior increased the attorney's fees and costs. The court charged Husband with $88,676 as Wife's attorney's fees. The trial court further awarded Wife an additional $40,000 in attorney's fees on appeal.

The evidence on the record shows that the trial court properly considered Husband's superior ability to earn income, Husband was awarded significant marital property even though he was awarded 40 percent, Husband engaged in numerous instances of marital misconduct, and Husband dissipated marital funds by spending $352,484 two weeks prior to trial. Husband here has not met his burden and shown that the trial court abused its discretion in ordering him to pay attorney's fees.

Husband's ninth point is denied.

### III. Conclusion

We reverse and remand the trial court's Judgment as to Husband's second point on appeal. The trial court is instructed to hold a hearing and reconsider its maintenance award based on Wife's reasonable needs and her ability to provide for such. Accordingly, the trial court shall thereafter re-calculate child support. The trial court's Judgment is affirmed in all other respects.

CLIFFORD H. AHRENS, P.J., and GARY M. GAERTNER, JR., J., concur.