

# In the Missouri Court of Appeals
# Eastern District

## DIVISION III

| | | |
|---|---|---|
| SCOTT E. COURTNEY, | ) | No. ED100834 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Mary Elizabeth Ott |
| TERRESA KAY COURTNEY, | ) | |
| | ) | |
| Respondent/Cross-Appellant. | ) | FILED:  March 17, 2015 |

### Introduction

Appellant Scott Courtney ("Father") appeals from the trial court's First Amended Order and Judgment entered on August 7, 2013, ("Amended Judgment") modifying the parties' 2010 divorce decree.  Respondent Terresa Courtney ("Mother") cross-appeals from the same Amended Judgment.  Between the two parties, ten points on appeal and cross-appeal are advanced challenging every aspect of the Amended Judgment.

Father's first three points address the trial court's custody modification and adopted Parenting Plan.  Because the Amended Judgment did not include a specific written parenting plan as required by Section 452.375.9,[1] we reverse the trial court's judgment with respect to the Parenting Plan.  Father argues that the trial court's judgment modifying custody should be

---

[1] All statutory references are to RSMo. 2000.

reversed because the trial court based its judgment on stale evidence adduced seventeen months prior to the Amended Judgment. We are persuaded that the trial court's reliance on outdated evidence limited its ability to properly determine the best interests of the children based upon the current situations of the parties. Accordingly, we reverse the trial court's judgment modifying custody of the minor children.

Father also challenges the trial court's judgment modifying his maintenance and child support obligations. Mother similarly challenges the trial court's judgment modifying maintenance and child support. Because the trial court based its judgment modifying the parties' maintenance and child support obligations on impermissibly stale evidence, included improper child-related expenses in its maintenance calculation, and failed to attach or use an updated Form 14 with proper figures in calculating child support, we reverse the trial court's judgment modifying maintenance and child support.

Father further contests the trial court's determination that he failed to timely object to Mother's proposed relocation to Michigan. Although the trial court erred in finding Father's objection untimely and in delaying consideration of his objection, Father was given a full opportunity to litigate the issue on the merits. Because the trial court's decision to grant Mother's relocation was unaffected by its errors and supported by substantial evidence, we affirm the trial court's judgment granting Mother's motion to relocate and denying Father's Objection to Relocate.

Father additionally challenges the trial court's award of attorneys' fees to Mother as part of its judgment finding Father in contempt. The trial court has inherent authority to award attorneys' fees to Mother as part of the contempt proceedings. Because the trial court did not

2

abuse its discretion in exercising that authority, we affirm the trial court's award of attorneys' fees.

Finally, Father argues that the trial court erred in failing to make certain findings of fact in the Amended Judgment which Father requested prior to trial. Because the absence of the requested findings in the Amended Judgment does not materially interfere with our appellate review, we deny this portion of Father's appeal.

Mother contests the portion of the Amended Judgment finding Father in contempt. Because the record reflects that the order of contempt has not been enforced against Father, the contempt order is not a final judgment for purposes of appeal. Accordingly, we dismiss this portion of Mother's appeal.

Factual and Procedural History

## I. The 2010 divorce decree

Mother and Father dissolved their marriage on January 11, 2010. The original divorce decree was later amended and became final on February 16, 2010. Pursuant to the 2010 divorce decree, Mother and Father were granted joint legal and physical custody of their minor children, with Mother designated as the residential parent. Mother was awarded $6,000 per month in spousal maintenance and $1,465 per month in child support. The 2010 judgment found that Father's gross monthly income at the time of the divorce was $21,550 per month, imputed gross income to Mother of $1,500 per month, and found that Mother's reasonable monthly expenses, not including expenses for the children, were $7,310 per month.

The 2010 divorce decree granted Mother and Father joint legal and physical custody of their children pursuant to the parenting plan they had adopted. The 2010 decree also found that Father had an alcohol problem which "impacts on the care and welfare of the parties' minor

children." Pursuant to the parenting plan, Father was granted custody of the children every other weekend during daytime hours, in addition to certain weekdays. Father was also granted custody time during holidays and extended time during the summer. The parenting plan also required Father to participate in an alcohol evaluation with Dr. Ralph Orlovick ("Dr. Orlovick").

## II. Litigation following 2010 divorce decree

Father appealed the 2010 judgment, but voluntarily dismissed his appeal in August of 2010. On September 22, 2010, Father filed a motion to modify the judgment in which he sought sole physical custody of the children and child support from Mother. Father stated in his motion to modify that he had lost his job. On that same date, Father also filed an objection to Mother's proposed relocation of the children's residence to Michigan on the grounds that the relocation would interfere with his ability to spend meaningful time with the children. Mother had mailed Father a relocation notice dated August 24, 2010, informing Father that for financial reasons, Mother needed to relocate to Michigan to reside with her father. Mother filed an answer and counter-affidavit in support of her proposed relocation, alleging that the children's best interests would be served by residing with her in Michigan. Mother simultaneously filed a cross-motion seeking to hold Father in contempt for failing to pay child support and maintenance, as well as for failing to comply with property division obligations pursuant to the 2010 judgment. Mother also filed her own motion to modify. In January of 2011, the trial court appointed William Grant ("Grant") guardian ad litem for the children. In February of 2011, Father filed an amended motion to modify. Shortly before trial, Mother filed an amended motion for contempt, and Father filed a request for findings of fact and conclusions of law.

The trial court heard evidence on the parties' pending motions on February 28, 2012, and March 12, 2012. Father and Mother testified regarding Mother's relocation to Michigan and

4

their experiences regarding custody and visitation of the children. Mother called Dr. Orlovick to testify about the alcohol evaluation he performed of Father in 2011 pursuant to the terms of the 2010 divorce decree. Dr. Orlovick testified that based on his 2011 evaluation, Father was exhibiting signs of alcohol abuse. Father testified that he lost his job in August of 2010 and remained unemployed until August of 2011. Father testified that his salary at the time of trial was $150,000 per year. Mother testified that she secured employment in Michigan in 2011, and was earning $60,000 per year. Mother further testified that her monthly expenses, for purposes of maintenance, totaled $8,974.05 as reflected on her Exhibit QQ filed with the trial court.

### III. The Amended Judgment

The trial court took the matter under submission on March 12, 2012. In May of 2012, Mother filed a motion to reopen the case to allow for the admission of additional evidence. Specifically, Mother alleged that a judgment and garnishment had been filed against her on a Bank of America credit card debt that Father had failed to pay. The trial court appeared to have granted leave to reopen the matter, but the record does not show any evidence presented on this claim, and the trial court later indicated that the motion had been denied. On July 11, 2012, Mother again filed a motion to reopen the record, alleging that she was incurring additional expenses after moving to Michigan with the children. Mother filed a revised statement of income and expenses reflecting current monthly expenses of $11,706.64, and alleging that her wages were being garnished by Bank of America due to the credit card debt incurred by Father. The trial court denied Mother's motion. On October 4, 2012, Mother filed a third motion to reopen the record, alleging that Father had changed jobs and that Mother suspected his income had substantially increased. The trial court again denied Mother's motion.

The trial court issued its Order and Judgment on the various motions filed by the parties on July 29, 2013. The trial court then issued the Amended Judgment, *sua sponte*, on August 7, 2013.

The Amended Judgment modified Father and Mother's custody of the children pursuant to a new parenting plan, which the Amended Judgment stated was attached as an exhibit. Although a parenting plan was attached as an exhibit to the original July 29, 2013 judgment, no parenting plan was attached as an exhibit to the Amended Judgment. In the Amended Judgment, the trial court stated that it considered the "best interests of the [children] for a frequent, continuing and meaningful relationship with both parents" and concluded that Mother "has been the parent offering the most stability to the minor children." In support of its custody ruling, the trial court found that Father had abused alcohol in the past and did not comply with the treatment requirements of the 2010 judgment until immediately prior to trial. The trial court also cited the testimony of Dr. Orlovick, including Dr. Orlovick's conclusion that Father's drinking patterns, if left unchecked, would negatively impact him and others.

The Amended Judgment also granted Mother's motion to relocate to Michigan. The trial court denied Father's Objection to Relocation and found that it was not timely filed. The trial court found that Mother notified Father by mail of her intention to relocate to Michigan on August 24, 2010, and that Father filed his Objection to Relocation on September 22, 2010. The trial court then inexplicably found that Father's Objection to Relocation was untimely because it was "not filed within 30 days of [Mother's] August 24, 2010 certified letter notifying [Father] of the proposed move, but rather some 60 days following the certified notice." In addition, the trial court found that Mother and the children relocated to Michigan on September 29, 2010. As a result, the trial court found that the relocation failed to comply with Section 452.377.2, which

6

requires the relocating parent to wait 60 days after providing notice to execute the proposed relocation. Nevertheless, the trial court granted Mother's motion to relocate, concluding that Mother relocated for legitimate financial reasons and that the relocation was in the best interests of the children. Specifically, the trial court found that Mother's reasons for relocation included the "extreme financial crisis in which she found herself" and her belief that she and the children would enjoy "a greater degree of financial security and social welfare in Michigan." The court also found that the children were well-adjusted to their residence in Michigan, with both enrolled in school, performing well academically, engaged in extracurricular activities, and enjoying the company of relatives and friends in the community. In addition, the court found that, in considering the best interests of the children for a frequent, continuing and meaningful relationship with both parents, Mother "has been the parent offering the most stability to the minor children."

The Amended Judgment reduced Father's maintenance obligation to $4,500 per month. The trial court found that at the time of trial, Father's gross income was $12,500 per month and Mother's income was "$65,000 annually or $5,000 gross monthly." The trial court further found that Father's expenses at the time of trial were $5,849 per month, leaving him with a surplus of $3,000 per month, while Mother experienced a deficit of $3,900 per month. The trial court based its calculations as to Mother's monthly deficit on Mother's Exhibit QQ, which the trial court accepted as an accurate reflection of Mother's monthly expenses. Exhibit QQ listed Mother's monthly expenses at the time of trial as $8,974.05.

The trial court also reduced Father's child support obligation to $1,221 per month for two children, and $992 per month for one child. The trial court explained that its child support

7

calculation resulted from an "accurate Form 14 attached as 'Exhibit 1.'" No such exhibit was attached to the Amended Judgment.

Finally, Father was found to be in contempt of the original 2010 judgment for not paying the full amount of maintenance and child support, and ordered to pay $7,500 for Mother's attorneys' fees. The Amended Judgment made no finding as to the amount of Father's delinquency, nor did it specify what Father was required to do to purge himself of the contempt.

Mother timely filed a post-trial motion to amend the Amended Judgment or for a new trial. Father also timely filed a motion to amend the Amended Judgment. The trial court did not rule on either motion within ninety days. This appeal follows.

Points on Appeal and Cross-Appeal

Father presents seven points on appeal, and Mother presents three points on cross-appeal. In his first point on appeal, Father contends that the trial court erred when it failed to include a specific written parenting plan with the Amended Judgment as required by Section 452.375.9. In his second point on appeal, Father argues that although the trial court may have intended to adopt Mother's Parenting Plan, the plan is void because it contains multiple contingencies and provides for the continued involvement of the guardian ad litem beyond the date of the judgment. Father's third point on appeal avers that the trial court erred in modifying custody of the children because the length of time between the date of trial and the date of the trial court's judgment – more than seventeen months – indicates that the trial court relied on stale evidence rather than considering the best interests of the children based on the current situations of the children and parents. In his fourth point on appeal, Father claims that the trial court erred in modifying Mother's maintenance and child support awards and in awarding Mother attorneys' fees because the length of time between the date of trial and the date of the trial court's judgment prevented

8

the trial court from considering the current financial resources of the parties, leaving the trial court to rely on stale financial information. In his fifth point on appeal, Father contends that the trial court erred in finding Father's objection to Mother's proposed relocation was untimely filed. In his sixth point on appeal, Father asserts that the trial court erred in not terminating Mother's maintenance award because the award does not balance Mother's needs with Father's ability to pay, and because the award improperly includes expenses for the needs of the children in addition to Mother's needs. In his final point on appeal, Father maintains that the trial court erred in failing to make certain findings of fact in its judgment which Father requested.

On cross-appeal, Mother first contends that the trial court abused its discretion in awarding child support of only $1,221 per child for two children, and $992 for one child, because those figures are contrary to law, not supported by substantial evidence, and inconsistent with other parts of the Amended Judgment. Mother next asserts that the trial court abused its discretion in reducing her maintenance award because the modification was based on stale financial information. Finally, Mother contends that the trial court abused its discretion in failing to identify the terms and conditions of the 2010 decree with which the trial court found Father had failed to comply in its contempt judgment.

### Standard of Review

In a judge-tried case, we will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). We defer to the trial court's determinations of credibility and view the evidence and the inferences drawn therefrom in the light most favorable to the judgment. Vinson v. Adams, 192 S.W.3d 492, 494 (Mo. App. E.D. 2006).

9

## I. The custody modification and Parenting Plan

We address Father's first three points on appeal together as each point relates to custody of the minor children. In his first three points, Father challenges the trial court's custody modification and the associated Parenting Plan purportedly adopted in the Amended Judgment.

Father initially argues that the trial court erred in failing to include a written custody plan in accordance with Section 452.375.9 because the Amended Judgment, while referencing that the Parenting Plan as an attached exhibit, failed to include any such exhibit. Father contends that even if we conclude the trial court properly adopted Mother's Parenting Plan despite failing to attach it to the Amended Judgment, the Parenting Plan is void because its enforcement is conditional upon the occurrence or non-occurrence of future events or acts. Mother acknowledges that the trial court failed to attach the Parenting Plan to the Amended Judgment, but maintains that the particulars of the Parenting Plan nevertheless can be gleaned from the record, as the trial court made no changes from the parenting plan originally adopted in the July 29, 2013 judgment. Mother also concedes that the Parenting Plan may contain unlawful contingencies, but suggests that the correct remedy is to remove the offending contingency and affirm the remaining provisions of the Parenting Plan.

Section 452.375.9 mandates that "[a]ny judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of section 452.310." Section 452.375.9. Here, because the Amended Judgment entirely replaced the July 29, 2013 judgment, we cannot simply impute the terms of the July 29, 2013 parenting plan to the Parenting Plan referenced in the Amended Judgment. Nor, as Mother suggests, can we glean the particulars of the missing Parenting Plan from the

10

record.  The Amended Judgment mentions that the Parenting Plan provides Mother with joint legal custody and sole physical custody of the children, but all other details concerning Father's visitation and temporary custody rights are only described as being "set forth in the Parenting Plan as attached hereto."  There is simply insufficient evidence of the contents of the Parenting Plan in the record to mitigate the trial court's failure to attach the plan to the Amended Judgment as required by statute.  To hold otherwise would require this Court to engage in rank speculation, which we will not do.  Because the specific written parenting plan required by statute for any custody modification judgment is lacking, Father's Point One is granted.  Accordingly, Father's Point Two is moot.[2]

In Point Three, Father argues that the trial court's judgment modifying custody of the children was error because the seventeen-month lapse of time between the completion of the trial and the issuance of the Amended Judgment prevented the trial court from considering the best interests of the children based on the current situations of the children and parents.  Mother admits that the trial court may have abused its discretion in allowing seventeen months to pass between trial and the Amended Judgment, but maintains that Father did not suffer any prejudice from the delay, and thus reversal is not required.

The trial court indicated that Father's alcohol abuse was an important factor in its custody decision, specifically noting Dr. Orlovick's testimony and Father's failure to complete an alcohol evaluation pursuant to the 2010 judgment until shortly before trial.  No new or additional evidence was heard by the trial court following trial.  While evidence relating to Father's alcohol

---

[2] We note, however, had the trial court intended to adopt a parenting plan identical to the plan attached to the July 29, 2013 judgment, such a plan contains multiple unenforceable contingencies.  Where the enforcement of a judgment is conditional upon the occurrence or non-occurrence of future events or acts, the judgment is void.  Burch v. Burch, 805 S.W.2d 341, 343 (Mo. App. E.D. 1991).  As a result, custody judgments which call for an automatic change in custody upon the happening of some future event are unenforceable.  Id.  A review of the parenting plan attached to the July 29, 2013 judgment reveals that the plan conditions Father's overnight custody rights on negative urine test results and the completion of outpatient alcohol testing.  The plan also calls for Father to lose any overnight custody rights previously gained upon the occurrence of a future positive urine test.

use was introduced at trial, such evidence had questionable relevance at the time the trial court entered its Amended Judgment modifying the custody arrangements seventeen months later.

Our overriding concern with respect to custody and visitation modification is to ensure that the best interests of the children are served. Searcy v. Searcy, 38 S.W.3d 462, 469 (Mo. App. W.D. 2001). Here, the trial court was no longer able to accurately determine whether its modification served the best interests of the children because of the substantial time that had elapsed from the taking of evidence to the entry of judgment. The trial court simply could not know the current situations of the respective parties at the time it finally entered judgment. See id. at 471 (where custody decision was based on evidence adduced 30 months prior, "the court could not know based on the record before it that a change in visitation was in the best interests of the children, for it simply did not know what their current situation was.") Here, the trial court lacked any recent or current evidence relating to Father's alcohol abuse, and its effect on the best interests of the children. Because the trial court left little doubt that Father's alcohol use was a significant factor in its initial custody decision, we are persuaded that Father suffered prejudice by the trial court's failure to render a judgment based upon current evidence relating to that issue. Given this circumstance, the trial court's judgment modifying custody is not supported by substantial evidence, and Father has suffered prejudice as a result. Accordingly, we reverse the trial court's judgment and remand for further hearings. Father's Point Three is granted.

## II. Relocation

Father's fifth point on appeal challenges the trial court's determination that his Objection to Relocation was untimely filed. The trial court found in its Amended Judgment that Mother gave notice of her intent to relocate on August 24, 2010, and that Father filed his Objection to

12

Relocation on September 22, 2010. Both dates are confirmed by the record. Basic addition and subtraction reveals that August 24, 2010 and September 22, 2010 are separated by fewer than 30 days. Yet, the trial court concluded that Father's Objection to Relocation was not filed within 30 days of Mother's notice and was therefore untimely under Section 452.377. Father avers that the trial court's finding that the Objection to Relocation was untimely filed effectively disposed of the matter in Mother's favor causing Father prejudice that can be remedied only by reversing the judgment.

The language of Section 452.377.7 is clear: "The residence of the child may be relocated sixty days after providing notice, as required by this section, unless a parent files a motion seeking an order to prevent the relocation within thirty days after receipt of such notice." Section 452.377.7. The record unambiguously confirms that Father timely filed his Objection to Relocation within thirty days of Mother's notice of relocation. Accordingly, the trial court's conclusion that Father's Objection to Relocation was untimely under Section 452.377.7 is an erroneous application of the law.

Mother acknowledges the trial court's error, but argues that the error was harmless. Mother reasons that despite the trial court's finding that the Objection to Relocation was untimely, the trial court conducted a full hearing on the relocation issue, and therefore, Father suffered no prejudice. See Henry v. Henry, 353 S.W.3d 368 (Mo. App. S.D. 2011) (holding that father objecting to relocation was not prejudiced when he had a full opportunity to litigate the relocation issue on the merits and did so). In support of this claim, Mother notes that the trial court found in the Amended Judgment that Mother relocated for financial reasons, and that the children were well-adjusted to their residence in Michigan. Mother equates these findings, along

13

with the trial court hearing testimony on the relocation issue at trial, with a full opportunity for Father to litigate the relocation issue on the merits. We agree.

"The clear intent of section 452.377 is to 'stay' a parent's relocation, once a motion seeking to prevent relocation is timely filed, until relocation is subsequently permitted by the court." Henry, 353 S.W.3d at 373. The language of Section 452.377.7 is clear that absent a finding of exigent circumstances, the filing of a timely objection to relocation precludes a party from relocating until sixty days after notice is given pending judicial permission. Father was denied this statutory protection despite his timely objection because the trial court failed to hear any arguments on the relocation issue until trial, which occurred eighteen months after Father's Objection to Relocation. This delay was inexcusable and unexplained.

Nevertheless, Mother correctly notes that the trial court heard evidence on her relocation and found, based on the evidence, that her relocation was made in good faith and served the best interests of the children. The trial court heard testimony from both Mother and Father at trial about the circumstances surrounding the relocation, including Mother's financial difficulties, the children's adjustment to life in Michigan, the children's living and social situation in St. Louis, and Father's increased difficulty in visiting the children post-relocation. Father had a full opportunity at trial to present evidence that remaining in St. Louis was in the best interests of the children. The trial court also heard evidence at that time about Father's alcohol abuse and its potential to affect his ability to care for the children.

In addition, despite its erroneous conclusion that Father's initial Objection to Relocation was untimely, the record reflects that the trial court allowed the parties to conduct full pleadings following Father's Objection to Relocation. To wit, the court accepted Mother's response to Father's objection, as well as Mother's cross-motion to relocate and Father's answer thereto.

Based on these facts, we conclude that Father enjoyed a full opportunity to litigate the relocation issue on the merits, even though his opportunity to be heard was not as expeditious as it should have been.

Mother also correctly points out that the Amended Judgment contained factual findings regarding the circumstances surrounding Mother's relocation and the children's adjustment to life in Michigan which provide support for the trial court's conclusion that relocation was proper. For example, the trial court found that Mother's reasons for relocation included the "extreme financial crisis in which she found herself" and her belief that she and the children would enjoy "a greater degree of financial security and social welfare in Michigan." The court also found that the children were well-adjusted to their residence in Michigan, with both enrolled in school, performing well academically, engaged in extracurricular activities, and enjoying the company of relatives and friends in the community. In addition, the court found that, in considering the best interests of the children for a frequent, continuing and meaningful relationship with both parents, Mother "has been the parent offering the most stability to the minor children."

A party seeking to relocate with minor children bears the burden of proving that the proposed move is made in good faith and is in the best interests of the children. Section 452.377.9; Fohey v. Knickerbocker, 130 S.W.3d 730, 734 (Mo. App. E.D. 2004). While it is the declared public policy of Missouri to promote frequent, continuing, and meaningful contact with both parents after a divorce, a trial court may nevertheless properly permit relocation of children even where it will make visitation more difficult for the noncustodial parent. Id. at 734, 736. Here, the trial court acknowledged that Mother's relocation to Michigan made it more difficult for Father to visit the children, but nonetheless concluded that relocation was in the children's best interests given the relative stability of Mother and Father; Mother's financial situation

15

caused in part by Father's failure to satisfy his maintenance and child support obligations; and the positive adjustment to Michigan made by the children. Viewing the evidence in the light most favorable to the judgment, we find that the trial court's conclusion that relocation was in the best interests of the children is supported by substantial evidence.

We also note that the record contains no evidence to suggest that Mother's decision to relocate was not made in good faith. When a trial court considers whether a parent's desire to relocate a child is in "good faith," the question is whether "the relocating parent's motive or purpose for relocating [is] something other than to disrupt or deprive the non-relocating parent of contact with the children." Mantonya v. Mantonya, 311 S.W.3d 392, 399 (Mo. App. W.D. 2010). Here, the clear impetus for relocation was Mother's attempt to escape her dire financial situation in St. Louis by seeking employment and family support in Michigan. Mother's intentions constitute a valid, good faith reason for relocation. See In re S.E.P. v. Petry, 35 S.W.3d 862, 869 (Mo. App. W.D. 2001) ("[W]here the custodial parent, who has exercised the right of custody and control in a manner conducive to the welfare and development of the children, demonstrates a need to move from the state in order to achieve employment and financial betterment which will subserve the best interest of the children, judicial permission to remove the children is warranted."). Further, although Mother violated Section 452.377.7 by relocating despite Father's objection and prior to sixty days from the time she notified Father of her intent to relocate, such violation does not mandate a finding that Mother's request for relocation was not made in good faith. Mantonya, 311 S.W.3d at 400. We find the trial court's conclusion that Mother's relocation was made in good faith is supported by substantial evidence.

The lengthy delay between Father's Objection to Relocation and his opportunity to litigate and the trial court's error regarding the timeliness of Father's objection are unfortunate.

16

However, we are not persuaded that these circumstances adversely affected the court's ultimate decision as to relocation, which is supported by substantial evidence in the record. The judgment of the trial court granting Mother's motion to relocate and denying Father's Objection to relocate is affirmed. Accordingly, Father's Point Five is denied.

## III. Modification of maintenance and child support obligations

In his fourth and sixth points on appeal, Father challenges the trial court's modification of his maintenance and child support obligations, as well as the trial court's award of attorneys' fees to Mother. Similar to his argument relating to the modification of custody, Father argues that the trial court's judgment modifying maintenance and child support and ordering the payment of attorney's fees is error because the trial court relied on stale information in making its determination. While Father contends the trial court erred in not terminating Mother's maintenance award completely, Mother argues in her cross-appeal that the trial court abused its discretion in reducing both the amount of child support and maintenance awarded under the Amended Judgment.[3]

### a. The attorneys' fees award was entered pursuant to the trial court's contempt judgment.

Father includes his challenge of the $7,500 awarded to Mother in attorneys' fees within his fourth point on appeal. It appears that Father bases his challenge on the fact that the trial court's judgment purports to award attorneys' fees to Mother pursuant to Section 452.355, under a section of the Amended Judgment entitled "Attorney's Fees." The Order portion of the Amended Judgment, however, contradicts this award. There, the trial court specifically grants Mother's Motion for Contempt and awards attorneys' fees "as set out below." In a following

---

[3] We note that Mother's Points One and Two reference the trial court's "abuse of discretion" in making its child support and maintenance modifications. Abuse of discretion is not the correct standard for appellate review of a *modification* judgment. Rather, the appropriate standard of review is the one articulated in Murphy v. Carron. See Delsing v. Delsing, 409 S.W.3d 574, 577 (Mo. App. E.D. 2013).

17

paragraph, the Amended Judgment states that "[n]o award of attorney fees is awarded to either party… but for [] attorney's fees of [Mother] which shall be paid by [Father] pursuant to the court's findings herein regarding contempt." The trial court then stated the amount of that award to be $7,500.

Based upon the language used by the trial court in the actual award of attorneys' fees, it is clear that the trial court made a single award of $7,500 for attorneys' fees to Mother pursuant to its contempt order. Accordingly, we will review that award within our discussion of the contempt judgment found in Section V below.

### b. The trial court's maintenance and child support modifications are not supported by substantial evidence.

Both Father and Mother agree that the trial court erred in basing the modifications of child support and maintenance on outdated financial information, although they disagree as to which party was prejudiced by that error. Father argues that the trial court should have terminated Mother's maintenance award altogether, while Mother maintains that neither the maintenance nor child support awards should have been reduced.

Modifications of maintenance and child support are governed by Section 452.370. Modification may be granted only "upon a showing of changed circumstances so substantial and continuing as to make the terms [of the original judgment] unreasonable." Section 452.370.1. In determining whether a substantial change in circumstances has occurred, the trial court is instructed to consider "all financial resources of both parties." Id. Implicit in considering "all financial resources of both parties" is the necessity of adducing and considering the *current* financial resources of the parties. This Court has held that "a trial court awarding maintenance and attorney's fees must consider the current 'financial resources' of the parties." Meier v.

18

Meier, 306 S.W.3d 692, 698 (Mo. App. E.D. 2010) (citing McCallum v. McCallum, 128 S.W.3d 62, 67 (Mo. App. E.D. 2003)).

Here, the evidence upon which the trial court relied in the Amended Judgment is too remote in time to have allowed the trial court to base its judgment on the current financial resources of Mother and Father. Seventeen months passed between the end of trial and the entry of the Amended Judgment. Given this substantial lapse in time, we are unwilling to conclude that the trial court properly considered the *current* financial situations of both Mother and Father when it entered judgment modifying the parties' maintenance and child support obligations. Further, the trial court's error in relying on seventeen-month-old financial information was material and prejudicial to the parties. Mother's repeated attempts to reopen the record while the case was under submission suggest that the financial information presented at trial may have changed by the time the Amended Judgment was entered almost a year and a half later. We hold that reversal is required to allow the trial court to hear evidence of the parties' respective financial circumstances that is reasonably proximate to the date of judgment. See Meier, 306 S.W.3d at 698 (requiring reversal where the trial court relied on fifteen to twenty-one month old valuations of stock options, incomes, and expenses of the parties, and where those valuations had changed significantly by the time the court entered its final judgment); McCallum, 128 S.W.3d at 67 (reversing the trial court's award of maintenance and attorneys' fees where the awards were entered based on evidence taken more than one year before the date of the court's final judgment).

While the trial court's reliance on stale evidence requires reversal and remand of the Amended Judgment modifying maintenance and child support, we find it necessary also to

19

address several errors in the Amended Judgment which require the trial court's attention on remand.

First, the trial court erred when it included expenses for the children in Mother's monthly expenses for purposes of calculating maintenance. Missouri law is clear that "awards of spousal maintenance and child support are two distinctly separate concepts, and that maintenance does not include child support." Schubert v. Schubert, 366 S.W.3d 55, 64 (Mo. App. E.D. 2012); Section 452.335. Instead, maintenance is limited to the needs of the recipient. Id. Accordingly, "the child's needs should not be included in the maintenance calculation." Id. This includes expenses for children's medical and dental insurance, car insurance, vehicle, and college, none of which should be included in maintenance. Id.

Here, the record reflects that the trial court improperly included expenses for the needs of the children in its calculation of Mother's maintenance award. The trial court accepted Mother's testimony and her Exhibit QQ as evidence of her monthly expenses, finding in the Amended Judgment that "the living expenses of [Mother] at the time of trial were $8,974.05." This monthly expense amount is reflected in Mother's Exhibit QQ, and was confirmed by Mother at trial. Included within Mother's total monthly expenses of $8,974.05 are several expenses related solely to the needs of the children which should not have been included in the trial court's maintenance calculation. These expenses, listed on pages 3 and 4 of Exhibit QQ, include amounts for the children's education, medical and dental care, and college expenses, among others. The trial court's inclusion of expenses for the needs of the children in Mother's monthly expenses for the purpose of calculating maintenance was erroneous and contrary to well-

established legal principles.  See, e.g., Schubert, 366 S.W.3d at 64; Atchley v. Atchley, 334 S.W.3d 709, 714 (Mo. App. E.D. 2011).[4]

Second, the trial court made several errors in calculating child support.  Most obviously, the trial court's aforementioned errors in calculating maintenance – both in relying on stale evidence and including expenses for the children – necessarily affected its child support calculation, as maintenance is included within the Form 14 calculation.  However, even had the trial court used proper expense figures in calculating Mother's maintenance award, the child support calculation would still be deficient in certain other respects.

In determining a proper child support amount, the trial court must apply a two-step test. Sullins v. Sullins, 417 S.W.3d 878, 881 (Mo. App. E.D. 2014).  First, the trial court must calculate the presumed child support amount using a Form 14.  Id.  Second, the trial court will consider whether the presumed Form 14 amount is "unjust or inappropriate."  Id.  Appellate review of this two-step analysis is under the standard set forth in Murphy v. Carron.  The record clearly reflects that the trial court failed to update its Form 14 calculation to reflect the reduction in Mother's maintenance award which occurred between the July 29, 2013 judgment and the Amended Judgment.  Further, the trial court did not attach a Form 14 to the Amended Judgment. The Form 14 attached to the trial court's July 29, 2013 judgment reflected a monthly maintenance award to Mother of $6,000.  The July 29, 2013 judgment found Father's child support obligation to be $1,221 per month for two children and $992 per month for one child based on the Form 14 calculation.  The Amended Judgment, meanwhile, purported to base its child support award on an "accurate Form 14 attached as 'Exhibit 1,'" but no Exhibit 1 was

---

[4] We also note that the trial court found Mother's income to be "$65,000 annually or $5,000 gross monthly income." The trial court then used the $5,000 monthly figure in calculating both maintenance and child support.  As $65,000 divided by twelve months equals a monthly income of $5,416.66 rather than $5,000, the trial court should resolve this discrepancy on remand and use an accurate monthly income figure for Mother in calculating maintenance and child support.

21

attached to the Amended Judgment. The Amended Judgment reduced Mother's maintenance award to $4,500 per month, yet left unchanged Father's child support obligation. We are unable to determine from the record the existence of an updated Form 14 using the $4,500 maintenance figure. Without evidence in the record to reflect the reduced maintenance ordered by the trial court, we are unable to find that the trial court's Amended Judgment, as it relates to the child support modification, is supported by substantial evidence.

We hold that neither the trial court's maintenance modification nor the trial court's child support modification is supported by substantial evidence because the trial court based both modifications on impermissibly stale evidence, included improper child-related expenses in its maintenance calculation, and failed to attach or use an updated Form 14 with proper figures in calculating child support.

We will not speculate as to whether the trial court should have terminated, reduced, or increased Mother's maintenance, or whether the child support award should have been reduced or increased. Such determinations are within the sound discretion of the trial court. Bull v. Bull, 634 S.W.2d 228, 229 (Mo. App. E.D. 1982). However, the record must contain substantial evidence to support the trial court's judgment. Accordingly, we reverse and remand with instructions to the trial court to adduce current financial information from the parties and to properly use that evidence in making determinations as to modification of maintenance and child support.

## IV. Father's request for findings of fact

In Point Seven, Father avers that the trial court erred in failing to make certain findings of fact in the Amended Judgment which Father requested prior to trial. Father identifies six requested findings which he claims the trial court did not make. A trial court's failure to make

22

findings after they have been properly requested by a party is error.  <u>Lattier v. Lattier</u>, 857 S.W.2d 548, 549 (Mo. App. E.D. 1993).  However, such error requires reversal only if the failure to make the required findings "materially interferes with appellate review."  <u>Cohen v. Cohen</u>, 178 S.W.3d 656, 662 (Mo. App. W.D. 2005).  Our review of the record reveals that some of the six findings identified by Father were in fact made by the trial court in the Amended Judgment, while the rest, although absent or incomplete, do not materially interfere with our ability to effectively review the merits of the appeal.  Father's Point Seven is denied.

## V.  The contempt judgment and award of attorney's fees to Mother

Mother contends in her third point on appeal that the trial court abused its discretion in failing to identify the terms and conditions of the 2010 decree with which the trial court found Father had failed to comply in its contempt judgment.  Mother argues that Father requested findings of fact if he were found in contempt and the trial court found him to be in contempt, but failed to make findings identifying his contumacious conduct.  Mother also posits that the trial court failed to address all of her properly pleaded allegations of contempt in the Amended Judgment.

### a.  The contempt judgment is not a final, appealable judgment.

We agree that the trial court's contempt judgment is lacking in some respects.  The trial court made several findings of fact regarding Father's failure to comply with certain conditions of the 2010 decree and concluded that Father "did act in contempt of the court's original decree and did so without cause or justification."  Specifically, the trial court found that at the time of Mother's relocation, Father had failed to pay maintenance and child support for a period of several months and was therefore "in arrears upon such payments in an amount in excess of ten thousand dollars."  The trial court noted that Father at some point made "partial payments in the

23

amount of $5,000" to Mother and made a partial split of his 2009 tax refund with Mother, but that Father "remain[ed] in arrears upon the maintenance and child support at the time of [the Amended Judgment]." The trial court also found that Father failed to provide mother with one half of his 2008 tax refund check pursuant to the 2010 judgment.

Based on the foregoing, the trial court ordered that "[Mother's] Motion for Contempt is granted, and [Mother] is awarded attorney's fees as set out below." Curiously lacking from the trial court's order of contempt is any instruction on the amount Father owed to Mother as a result of his arrearage.

An order of civil contempt is an appealable judgment like any civil judgment. Like other judgments, a civil contempt order must be final before it may be appealed. When an order of contempt is not final, this Court lacks jurisdiction and must dismiss the appeal. In re Marriage of Crow & Gilmore, 103 S.W.3d 778, 780 (Mo. 2003).

For purposes of appellate review, a civil contempt order is not final until "enforced." Id. at 781. When "enforcement" occurs depends on the remedy imposed, two of which are available in a civil contempt judgment – a fine and imprisonment. Id. When the remedy is a fine, the contempt order is "enforced" when the moving party executes on the fine. Id. In this case, the contempt order awards only attorneys' fees to Mother,[5] making no mention of any additional fine despite the findings of Father's arrearages. Nothing in the record indicates that any action has been taken by Mother or Father with respect to the contempt order. To the contrary, the record indicates that the contempt order has not yet been enforced. Accordingly, the trial court's contempt order is not a final, appealable judgment properly before this Court. Mother's Point Three is dismissed.

_____

[5] As discussed *infra*, the Amended Judgment purports to award Attorney's fees in the amount of $7,500 pursuant to Section 452.355, but then states that attorney's fees in the same amount are awarded to Mother solely "pursuant to the court's findings herein regarding contempt."

**b. The trial court's award of attorneys' fees.**

Lastly we address Father's challenge to the trial court's award of $7,500 in attorneys' fees. The trial court's ability to award attorneys' fees in Chapter 452 contempt cases flows from the trial court's inherent powers and is not reliant on Section 452.355. Bruns v. Bruns, 186 S.W.3d 449, 452-53 (Mo. App. W.D. 2006). Under its inherent powers, a trial court has authority to assess attorneys' fees in civil contempt cases for willful disobedience of a court order. Id. at 453. Thus, the trial court acted within its authority when it awarded Mother attorneys' fees in its contempt order and judgment. We will reverse the award only if the trial court has abused its discretion. Id.

Although the trial court's judgment of contempt is not presently reviewable on appeal, our lack of jurisdiction to review the underlying contempt judgment does not prevent our review of the trial court's award of attorneys' fees to Mother. An award of attorneys' fees emanating from a civil contempt action is separate from the order and judgment of civil contempt. As such, the attorneys' fee award is appealable independent from the contempt judgment. Emmons v. Emmons, 310 S.W.3d 718, 726 (Mo. App. W.D. 2010) (finding that while the contempt judgment before the court was not a final appealable order, the award of attorneys' fees in a civil contempt proceeding "is independently appealable," and thus the court could consider the portion of the appeal challenging the attorneys' fee award).

As part of a civil contempt proceeding, a trial court may award attorneys' fees in connection with a party's willful disobedience of a court order. Such fees are assessed against the party violating the court's order "as part of the expenses and costs incurred by the complainant in the prosecution of the contempt proceedings." Bruns, 186 S.W.3d at 452 (quoting McNeill v. McNeill, 708 S.W.2d 751, 754 (Mo. App. E.D. 1986)). Here, the record

25

contains substantial evidence of the expenses incurred by Mother in her attempt to collect unpaid maintenance and child support payments from Father. Accordingly, we find no abuse of discretion in the trial court's award of attorneys' fees to Mother as part of the contempt proceedings. The trial court's award of $7,500 to Mother for attorneys' fees is affirmed.

## Conclusion

The trial court's judgments awarding attorneys' fees to Mother and granting Mother's motion for relocation are affirmed. That portion of Father's appeal challenging the trial court's failure to make requested findings of fact is denied, and that portion of Mother's appeal challenging the contempt judgment is dismissed. The remaining portions of the trial court's judgment modifying custody of the minor children and modifying maintenance and child custody are reversed and remanded to the trial court for proceedings consistent with this opinion.

Kurt S. Odenwald, Presiding Judge

Robert G. Dowd, Jr., J., Concurs
Gary M. Gaertner, Jr., J., Concurs

26