

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| DANELLE M. FRANTZ, | ) | No. ED102647 |
| n/k/a DANELLE M. SHIPP, | ) | |
| | ) | Appeal from the Circuit Court of |
| Appellant, | ) | St. Louis County |
| | ) | 09SL-DR05188-01 |
| vs. | ) | |
| | ) | Honorable Thomas J. Frawley |
| DAVID B. FRANTZ, | ) | |
| | ) | Filed: March 15, 2016 |
| Respondent. | ) | |

### OPINION

Danelle M. Shipp ("Mother") appeals the trial court's judgment that modified the final decree of divorce ("Final Decree") between her and her former husband, David B. Frantz ("Father"), and found her in contempt for interfering with Father's exercise of his visitation rights with their minor son, C.F. ("Child"). In her several points on appeal, Mother claims that the trial court erred (1) by finding her in contempt and ordering her to reimburse Father for certain of his litigation travel expenses, attorney's fees, and losses on airfare (*Points I, II, and VII*); (2) by awarding Father joint legal and physical custody of Child (*Points III and IV*); (3) by allowing Father's parents to exercise his physical custody rights in his absence (*Point V*); (4) by ordering that Mother pay 35% of Child's transportation expenses for his visits with Father (*Point VI*); and (5) by failing to make certain changes to the visitation provisions of the Final Decree as requested in her counter-motion to modify (*Point VIII*).

We summarily deny Mother's Points IV, V, VI, and VIII. On these claims, we find that an opinion reciting the detailed facts and restating the principles of law would have no precedential value. Pursuant to Rule 84.16(b), we have provided the parties with a memorandum, for their information only, setting forth the reasons for our rejection of those points on appeal.

However, Mother's remaining points on appeal require our consideration in this published opinion. We dismiss Mother's appeal of the trial court's contempt judgment because as an unexecuted judgment, it is interlocutory and unappealable. We affirm as to all remaining points.

## Factual and Procedural Background

On June 15, 2009, the District Court of Collin County, Texas, entered the Final Decree dissolving the marriage of Mother and Father. The Final Decree appointed Mother "sole managing conservator" and Father "possessory conservator" of Child. Mother registered the Final Decree in the Circuit Court of St. Louis County, Missouri.

In early 2013, Father filed his motion seeking a family access order. Father alleged that Mother had interfered with his visitation rights under the Final Decree. He requested that the court assess against Mother his reasonable expenses incurred as a result, including his attorney's fees and litigation travel expenses. Father also filed a motion to modify the Final Decree in which he asked the court to award him joint legal and physical custody of Child. Father asserted that Mother's repeated violations of the decree constituted a substantial change in circumstances making it necessary to modify the decree to serve Child's best interests.

Subsequently, Father filed his proposed parenting plan requesting that Mother be ordered to pay half of the transportation expenses for Child's visits with Father. In addition, Father filed

2

an application for a show cause order and a motion for judgment of contempt in which he alleged violations by Mother of his rights under the Final Decree and sought as relief his litigation travel costs, attorney's fees, and reimbursement for his losses on airfare resulting from Mother's conduct that Father alleged was contumacious.

The case proceeded to trial on these motions, and thereafter the trial court entered its judgment modifying the Final Decree and found Mother in contempt. The court ordered that Mother pay Father $3,300.00 for his losses on airfare resulting from her contumacious conduct, attorney's fees totaling $7,500.00, and litigation travel expenses of $2,728.73. This appeal follows.

## Standard of Review

In a court-tried case, we affirm the judgment below if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *In the Matter of S.J.M.*, 453 S.W.3d 340, 342 (Mo.App.E.D. 2015) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976)). We view the evidence in the light most favorable to the trial court's judgment, disregarding all contrary inferences and evidence. *Id.* at 342-43 (citing *Woods ex rel. Woods v. Cory*, 192 S.W.3d 450, 458 (Mo.App.S.D. 2006)).

We note also that an appellant faces a heavy burden to overturn the trial court's decision relating to an award of child custody. *Keel v. Keel*, 439 S.W.3d 866, 875 (Mo.App.E.D. 2014) (citing *Lindsey v. Lindsey*, 336 S.W.3d 487, 494 (Mo.App.E.D. 2011)). In reviewing a custody award, we presume the trial court considered all the evidence and made its award in the best interests of the child "because of the trial court's unique position for determining credibility, sincerity, character and other intangibles of witnesses that might not be completely revealed by the record." *Id.* (citing *Lahumondiere v. Lahumondiere*, 293 S.W.3d 110, 116 (Mo.App.E.D.

3

2009)). We make this presumption also because the trial court has "an affirmative duty to determine what is in the [child's] best interests." *Id.* (citing *Lindsey*, 336 S.W.3d at 494). "We therefore accord a trial court's determination regarding child custody greater deference than in other cases." *Id.* (citing *Flathers v. Flathers*, 948 S.W.2d 463, 471 (Mo.App.W.D. 1997)). We will not disturb a trial court's custody determination unless we are firmly convinced that the welfare of the child requires some other disposition. *Id.*

## Points I, II, and VII

In Points I and II, Mother claims the trial court abused its discretion in finding her in contempt for interfering with Father's visitation rights, and erred in ordering that she reimburse Father for his litigation travel expenses, attorney's fees, and losses on airfare resulting from her interference with visitation. Because Father has not yet executed on the trial court's contempt judgment, it is interlocutory and unappealable. Thus, we dismiss Mother's appeal as to the propriety of the contempt finding and the related order that Mother reimburse Father for his losses on airfare. However, the trial court's orders that Mother reimburse Father for his attorney's fees and litigation travel expenses are independently appealable, and we find that the court did not err in ordering such relief. First, in ordering such reimbursement the court did not, as Mother argues in Point VII, go beyond the scope of the pleadings. And second, awarding Father attorney's fees and litigation travel expenses was entirely proper here because Father prevailed on the issue of modification and the court found that Mother acted contumaciously to interfere with Father's visitation rights.

### The Contempt Judgment

Like other judgments, a civil contempt judgment is appealable only if it is final. *See In re Marriage of Crow & Gilmore*, 103 S.W.3d 778, 780 (Mo.banc 2003); *see also* section

4

512.020.5[1]. If a judgment of contempt is not final, we lack jurisdiction to review it and must dismiss any appeal disputing its propriety. *Id.* (citing *City of St. Louis v. Hughes*, 950 S.W.2d 850, 852 (Mo.banc 1997)). For purposes of appeal, a civil contempt order is not final until "enforced." *Id.* at 781; *see also Bailey v. Amon*, 941 S.W.2d 657, 658 (Mo.App.E.D. 1997) ("An order finding a party in contempt is interlocutory in nature and not appealable until it has been enforced."). When enforcement occurs depends on the remedy. *In re Marriage of Crow & Gilmore*, 103 S.W.3d at 781. When the remedy is a fine, the contempt order is "enforced" when the party who moved for contempt executes on the fine. *Id.* (citing *Union Hill Homes Ass'n, Inc. v. RET Development Corp.*, 83 S.W.3d 87, 92 (Mo.App.W.D. 2002)). Here, Father has not executed on the fine levied against Mother to reimburse him for the losses on airfare he sustained resulting from Mother's interference with his visitation with Child. Thus, the contempt order has not been enforced and remains interlocutory and unappealable until Father executes on the fine.

Mother argues that because the remedy of a flat $3,300 fine does not coerce her to comply with the trial court's contempt order, it lacks an enforcement provision and is either enforced when entered—and thus is appealable—or is an irregular and void order that must be vacated. We disagree.

Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947); *see also Odom v. Langston*, 213 S.W.2d 948, 951-52 (Mo.banc 1948) ("A proceeding for civil contempt has as its object remedial punishment by way of a coercive imprisonment, *or by a compensatory fine*, payable to the complainant.") (emphasis

---

[1] All statutory references are to RSMo 2000 unless otherwise indicated.

added); *K. Khan, Inc. v. Wortham*, 983 S.W.2d 539, 541 (Mo.App.E.D. 1998) ("A court may levy a compensatory fine against the violator payable to the plaintiff."). Because of the discretion normally accorded to a trial court in issuing and fashioning contempt orders (*see International Motor Co., Inc. v. Boghosian Motor Co.*, 870 S.W.2d 843, 847 (Mo.App.E.D. 1993)), fines for civil contempt need not be limited to per diem fines that expire upon compliance with the order, but may be compensatory. *In re Marriage of Hunt*, 933 S.W.2d 437, 448-49 (Mo.App.S.D. 1996) (citing *North Dakota ex rel. Young v. Clavin*, 715 S.W.2d 25, 26 (Mo.App.W.D. 1986)). And although compensatory fines for civil contempt must be related to the actual damages suffered by the injured party, *Hunt*, 933 S.W.2d at 449, the trial court's judgment here leaves no doubt that the $3,300 levied against Mother directly relates to the losses on airfare Father sustained resulting from Mother's interference with his visitation with Child.

Because Father may enforce the trial court's contempt judgment whenever he chooses to execute on the compensatory fine for his losses on airfare, the contempt judgment does not lack an enforcement mechanism. The contempt judgment is not irregular or void, nor was it enforced when entered. And it does not place Mother in what she misidentifies as a kind of "purgatory." Because Mother has not shown that she is unable to pay the $3,300 fine, she may pay it and escape her undesirable position as a civil contemnor at any time.

Consequently, until Father enforces the contempt judgment and renders it final and appealable, we lack jurisdiction to determine the propriety of the contempt judgment and the order arising from it for Mother to reimburse Father for his losses on airfare resulting from Mother's interference with his visitation with Child. Accordingly, we dismiss Mother's appeal as to those issues.

Attorney's Fees and Litigation Travel Expenses

The attorney's fees and costs awarded to a party moving for contempt are a "'different matter entirely' from the contempt order [because] an award of attorney's fees and costs 'is not a portion of the civil contempt order itself[,] which is [meant] solely to coerce compliance.'" *Bruns v. Bruns*, 186 S.W.3d 449, 452 (Mo.App.W.D. 2006) (quoting *City of Pagedale v. Taylor*, 790 S.W.2d 516, 518 (Mo.App.E.D. 1990)). Although "the trial court's judgment of contempt is not presently reviewable on appeal, . . . lack of jurisdiction to review the underlying contempt judgment does not prevent [review of] the trial court's award of attorneys' fees." *Courtney v. Courtney*, 458 S.W.3d 462, 480 (Mo.App.E.D. 2015). An award of attorney's fees or costs emanating from a civil contempt action "is separate from the order and judgment of civil contempt," and "is appealable independent of the contempt judgment." *Id.* (citing *Emmons v. Emmons*, 310 S.W.3d 718, 726 (Mo.App.W.D. 2010)). Thus, we have jurisdiction to determine whether the trial court properly ordered Mother to reimburse Father for his attorney's fees and litigation travel expenses.

Turning to that analysis, we note that the trial court's authority to order that Mother reimburse Father for his attorney's fees and litigation travel expenses springs from multiple sources. First, the trial court's ability to award attorney's fees and costs in Chapter 452 *contempt* cases such as this one flows from the court's inherent powers and not from any particular statute. *Id.* (citing *Bruns*, 186 S.W.3d at 452-53). "Under its inherent powers, the trial court has the authority to assess attorneys' fees in civil cases for willful disobedience of a court order." *Id.* (citing *Bruns*, 186 S.W.3d at 453). And "[s]uch fees are assessed against the party violating the court's order 'as part of the expenses and costs incurred by the complainant in the prosecution of the contempt proceedings.'" *Id.* (quoting *Bruns*, 186 S.W.3d at 452).

7

Second, section 452.355.1 authorizes the trial court, "after [it has] consider[ed] all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action," to balance the equities and "order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to section 452.300 to 452.415 and for attorney's fees." Thus, because Father brought this action under Chapter 452, the court after considering all the relevant factors here had the discretion to order Mother to pay a reasonable amount for Father's costs in maintaining the action, including his attorney's fees.

Third, section 452.400.7 provides in relevant part:

[T]he reasonable expenses incurred as a result of denial or interference with custody or visitation, including attorney's fees and costs of a proceeding to enforce visitation rights, custody or third-party custody, shall be assessed, if requested and for good cause, against the parent or party who unreasonably denies or interferes with visitation, custody or third-party custody.

Under this section, the trial court may assess such costs to the offending party even where the court also orders that party to pay those costs to compensate for contumacious conduct. *See* Section 452.400.7 ("In addition, the court may utilize any and all powers relating to contempt conferred on it by law or rule of the Missouri supreme court.").

Accordingly, here the trial court had the authority to grant proper requests by Father in his motion seeking a family access order and in his motion for judgment of contempt, to assess against Mother—whom the court found had interfered with Father's exercise of his visitation rights—Father's reasonable expenses incurred as a result of that interference, including his attorney's fees and litigation travel expenses. It simply does not matter, as Mother suggests in Point VII of her appeal, that Father did not request specifically in his motion to modify that the trial court order reimbursement of his litigation travel expenses. He requested such expenses in

his family access order motion and in his motion for judgment of contempt. Such relief was not, therefore, "beyond the scope of the pleadings."

Consequently, in light of the trial court's clear authority—stemming from at least three different sources—to order that Mother pay Father's attorney's fees and litigation travel expenses, we must affirm the court's order unless it constitutes an abuse of discretion. *See Bruns*, 186 S.W.3d at 453 (citing *Yeager v. Yeager*, 622 S.W.2d 339, 343 (Mo.App.E.D. 1981)) ("A trial court's award of attorney's fees [or other costs incurred in prosecution] in a civil contempt action will be reversed only when the trial court has abused its discretion."). Here, because Father prevailed on the issue of modification and the trial court found that Mother acted contumaciously to deprive Father of his visitation rights, the court did not abuse its discretion in ordering that Mother pay Father's attorney's fees and litigation travel expenses. Accordingly, Points I and II are dismissed in part and denied in part, and Point VII is denied.

### Point III

In Point III, Mother asserts that the trial court erred in awarding Father joint legal custody of Child because there was insufficient evidence of a change in circumstances, and because Father and Mother's inability to cooperate prohibited the court as a matter of law from awarding joint custody. However, because the trial court's award of joint legal custody is supported by substantial evidence, the court did not err as to Point III.

Section 452.410 provides the standard for modification of a custody decree. *Russell v. Russell*, 210 S.W.3d 191, 196 (Mo.banc 2007). Under that section, a court "shall not modify a prior custody decree unless . . . it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary

9

to serve the best interests of the child." The Missouri Supreme Court has stated that the change in circumstances necessary to modify a prior custody decree must be a "substantial" one. *Russell*, 210 S.W.3d at 196 (citing *Searcy v. Seedorff*, 8 S.W.3d 113, 117 (Mo.banc 1999)).

Under this standard, "if one parent interferes with the decretal rights of another, such interference constitutes a changed condition that may justify and require a modification of custody provisions." *Keel*, 439 S.W.3d 880 (citing *In re C.N.H.*, 998 S.W.2d 553, 557 (Mo.App.S.D. 1999)). Likewise, "one parent's efforts to alienate a child from the other parent [constitute] a changed condition that can form the basis for a change in custody." *Id.* (citing *In re C.N.H.*, 998 S.W.2d at 557). Clearly, "if a custodial parent interferes with another's visitation, it is relevant in determining 'the ability and the willingness of parents to perform their functions,' and [in] determining 'which parent is more likely to allow the child frequent and meaningful contact with the other parent.'" *Steven v. Stevens*, 977 S.W.2d 305, 308 (Mo.App.W.D. 1998) (citing *Lindell v. Coen*, 896 S.W.2d 525, 528 (Mo.App.W.D. 1995)). In other words, a custodial parent's interference with the visitation rights of the other parent is relevant in determining a child's welfare or best interests. *Id.*

These rules and principles stem from section 452.375.4's statement that "it is the public policy of [Missouri] that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child, except for cases where the court specifically finds that such contact is not in the best interest of the child." Indeed, this Court has noted that "[i]nterference by one parent with the other parent's decretal rights is contrary to public policy and society's interest in assuring children frequent and meaningful contact with both parents." *Keel*, 439 S.W.3d at 880 (citing *In re C.N.H.*, 998 S.W.2d at 557).

Here, the trial court found that Mother had intentionally and willfully interfered with the exercise by Father of his visitation rights with Child, and that she had failed to comply with her obligation under the decree to encourage love and respect between Father and Child. The court stated that Mother thus placed her own selfish interests ahead of the best interests of Child, and that her efforts to alienate Father from Child were in direct contravention of the best interests of Child. On that basis, the trial court concluded that a substantial change had occurred as a result of which the best interests of Child required that Father be awarded joint legal custody.

We find that the record here supports the court's findings and conclusion. Father testified that Mother several times denied his requests to access Child's educational and health care information, and to place Father on school records as an emergency contact. Further, Mother stopped using Child's legal surname, which came from Father, and referred to Child using the surname of her new husband. This allowed her to list her new husband as Child's "father" on school records in an attempt to keep the school from contacting Father. And most egregiously, Mother repeatedly interfered with Father's court-ordered visitation with Child, often by improperly forcing him to forfeit some of the days of a visitation period, or by failing to respond to or even acknowledge his visitation itineraries and properly-sent notices.

Nevertheless, Mother argues that since she and Father are unable to cooperate as joint custodians, joint custody cannot be in Child's best interests. Mother relies on section 452.375.1(2)'s definition of "joint legal custody" as a situation in which "parents share the decision-making rights, responsibilities, and authority relating to the health, education, and welfare of the child," and in which "parents shall confer with one another in the exercise" of making decisions as to those issues. She argues pursuant to *Mehler v. Martin*, 440 S.W.3d 529,

11

536 (Mo.App.E.D. 2014), that joint legal custody is inappropriate where parents are unwilling or unable to share the rights and responsibilities of raising their children.

We are not persuaded by Mother's argument. We note that "[j]oint legal custody is not always or necessarily inappropriate merely because there is some level of personal tension and hostility between the former spouses, '*provided that* there is substantial evidence that despite this acrimony the parties nonetheless have the ability and willingness to fundamentally cooperate in making decisions concerning their child's upbringing.'" *In re Marriage of M.A.*, 149 S.W.3d 562, 569 (Mo.App.E.D. 2004) (quoting *McCauley v. Schenkel*, 977 S.W.2d 45, 50-51 (Mo.App.E.D. 1998); *see also Shockley v. Shockley*, 882 S.W.2d 775, 776-77 (Mo.App.E.D. 1994). Also, given the specific circumstances of this case, we emphasize that section 452.375.5(1) dictates that joint custody shall not be denied *solely* because one parent opposes it.

Here, the trial court concluded that "[a]ny inability of [Father] and [Mother] to communicate on issues affecting [Child] is the product of [Mother's] refusal to consider that [Father's] opinions have merit"—i.e., her bare unwillingness to cooperate. And indeed, the court's findings reflect that Father attempted multiple times to communicate with her in the manner required to make shared decisions about Child's education, medical care, and visitation schedule, but that Mother often rebuffed or ignored him.

With regard first to Child's education and medical care, the court found that in Fall 2009, Father requested from Mother the names of and contact information for Child's school and primary physician six times before receiving a response. Mother responded more than three months after Father's initial request, and only after he threatened legal action. Also, when Father initially requested medical and educational information, he also requested pursuant to provisions of the Final Decree that his name always be listed on Child's school enrollment paperwork as an

12

emergency contact, and that he always be allowed access to parent-teacher conference reports and Child's other personal educational information. However, in disregard of Father's request and in violation of the decree, Mother enrolled Child at a different school without telling Father, failed to include his name on the emergency contact form, and told the school not to talk to Father over the phone or give him any information. She also changed Child's primary physician without telling Father and failed to inform him that Child had been admitted to a hospital after being involved in a car accident and had also undergone multiple treatments for chin lacerations from bicycle accidents.

Turning to Child's visitation with Father, the court found that Father attempted to cooperate with Mother in planning visitation so that it best served Child's welfare—so that, in line with Missouri public policy in section 452.375.4, it did not deny Child frequent and meaningful contact with both parents under the court-ordered visitation schedule—but Mother several times rejected or ignored Father's efforts to work with her. The court found that in Summer 2009, Father suggested in an email to Mother that they arrange Child's visitation so Child would have the amount of summer vacation contact with him provided for in the Final Decree—forty-two days—but would still be able to celebrate his birthday with Mother, even though Child's birthday fell within Father's parenting time under the Final Decree. However, Mother failed for more than a month to respond to Father's visitation proposal, and when she finally responded—weeks after he sent a confirmation email informing her that "everything [was] still on track for the dates and the itinerary sent" at the beginning of the summer, and only three days before the proposed visitation was to begin—she provided no explanation for ignoring his emails and merely chastised him for what she alleged was a failure on his part to follow the Final Decree's notice requirements for summer visitation. Further, she denied Father's proposed

13

visitation, and as a result he spent only two non-consecutive weeks with Child. Mother allowed this because she was "feeling charitable," but required that Father communicate with Child over the computer because otherwise she worried she was leaving Child with a "total stranger."

The court also found that in Fall 2010, when Mother requested—in response to Father's plan for Christmas visitation—that he pick up Child from Salt Lake City because two of her sister's children were being married in Utah during the Christmas holiday, Father offered to switch Christmas visitation periods so Child could attend the weddings with Mother and return to St. Louis for pickup by Father. But Mother rejected Father's offer, requiring Child to stay with her to attend the weddings and cutting into Child's Christmas visitation with Father. Mother had no right to insist that Father pick up Child from Salt Lake City for visitation, and thus wrongly forced Father into a position where he had to litigate, comply with her orders, or back down and make do with Child receiving only five of his allotted eight days of Christmas visitation.

In sum, then, there is substantial evidence in the record that despite Mother's failures to cooperate with him, Father is willing and able to communicate about and make shared decisions affecting Child's welfare, and that in the adduced circumstances where Father has attempted to work with Mother, only her bare unwillingness to cooperate has prevented Father from demonstrating that they share the ability to work together.[2] Because section 452.375.5(1) states that joint custody shall not be denied simply because one parent opposes it, we find that even in light of Mother's refusal to cooperate with Father, the trial court did not err in awarding him joint legal custody of Child. Point III is denied.

---

[2] We note that this case is thus factually distinguishable from *In re Marriage of Sutton*, 233 S.W.3d 786 (Mo.App.E.D. 2007), and all other cases in which *neither* parent shows the willingness or ability to communicate about and make shared decisions affecting their child's welfare.

14

## Conclusion

For the reasons stated above, we dismiss Mother's appeal of the trial court's contempt judgment because as an unexecuted judgment, it is interlocutory and unappealable, and we affirm as to all remaining points.

_____
James M. Dowd, Judge

Robert M. Clayton III, P.J., and
Lawrence E. Mooney, J., concur.